### RAUHOFF et al. v. HENRY GRAMLING & CO.
### No. 402.

District Court, E. D. Arkansas, W. D.
Aug. 22, 1941.

Fred A. Isgrig and Carl E. Langston, both of Little Rock, Ark., for plaintiff.

Jack Smallwood, of Russellville, Ark., for defendant.

TRIMBLE, District Judge.

For the purposes of jurisdiction the amendment to the complaint filed on June 9, 1941, may well be considered to state the jurisdictional allegations on which plaintiff and interveners reply in this cause, as follows: "The plaintiff, Talmadge Rauhoff, was employed by the defendant corporation on the 24th day of July, 1939; that his duties consisted of unloading flour, feed and other commodities from box cars on the track in Russellville, Arkansas, directly to trucks owned and operated by this defendant, and such goods were delivered without stop to the retailers of Pope County for the purpose of resale; that this plaintiff unloaded goods, wares and merchandise from transfer trucks directly onto trucks owned and operated by this defendant and such goods were transported without stop to the retail merchants in Pope County, for the purpose of resale; that this plaintiff went to the freight depot in the City of Russellville, and received drop shipments, taking them to the warehouse of the defendant, and such goods were then placed upon trucks owned and operated by this defendant and were transported without stop to the original purchaser; that this plaintiff unloaded goods, wares and merchandise from freight cars and freight trucks and placed them upon a platform alongside the defendant's warehouse, and these goods so handled by the plaintiff were later loaded by the plaintiff onto trucks owned and operated by the defendant and were transported without stop to retail merchants in Pope County for the purpose of resale, * * *."

In addition to this plaintiff asserts he took orders for goods from retail merchants who came into the warehouse and loaded the goods forthwith from cars onto trucks either of the retail merchant or for delivery to the retail merchant.

The defendant and its employees, the plaintiff and interveners here, were all engaged in commerce, but this is not sufficient to bring this case within the purview of the Fair Labor Standard Act of 1938, 29 U.S.C.A. § 201 et seq., for they must be engaged in interstate commerce as provided in the act.

Under the pleadings and the evidence in this case it is evident that in spite of plaintiff's allegations "such goods were transported without stop," these shipments came to rest and their interstate movement ceased upon delivery to the defendant at its place of business; with the possible exception of the so-called drop shipments.

Plaintiff's counsel in their able brief have cited a number of cases to support the view that it was a continuous movement from point of origin in the foreign state until delivery was effectuated at the place of business of the retail merchant, but the cases upon examination fail to bear out this contention, and all have distinguishing features from the case at bar.

In the case of Binderup v. Pathé Exchange, Inc., 263 U.S. 291, 44 S.Ct. 96, 68 L.Ed. 308, the manufacturers and producers of moving picture films sent them to an exchange, which they owned and operated in the foreign state, for distribution there by their agent. Certainly the fact that when the films reached the hands of their agent, a vice-principal, and were stored could not be said to come to rest so that interstate commerce had ceased, or the shipment had lost its interstate character. The acts of the agent or vice-principal in distributing the films were merely incidents in the interstate commerce the primary purpose of the principal being to get the films to the exhibitors, and the agent was merely one of the links in the chain carrying out this purpose. Here the purchaser of these

756

goods, wares and merchandise was the defendant, in no wise the agent of the seller in the foreign state, but an independent entity. The defendant did not represent out of state producers in the marketing of their goods, but was the actual purchaser to whom delivery was completed.

In the case of Stafford v. Wallace, 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735, 23 A.L.R. 229, the cattle, which was the subject of Interstate Commerce, moved into the stock yards consigned to commission men, agents and vice-principals of the shipper, for sale or reshipment. What has been said in the case of Binderup v. Pathé Exchange, Inc., supra, would apply here.

■■■ Plaintiff and interveners have cited Grand Union Tea Company v. Evans, 216 F. 791, by the District Court for the District of Oregon. This being an opinion by a District Court is not binding on this court, but merely advisory, and even here the goods were shipped from the foreign state to the agency of the shipper, and the ownership remained in the shipper until delivered to and paid for by the ultimate consumer.

To sustain the averments of their pleadings plaintiff and interveners have presented to the court the decision by the Northern District Court of Georgia in the case of Phillip B. Fleming, Adm'r of Wage and Hour Division, U. S. Dept. of Labor v. Isidore Alterman, 38 F.Supp. 94, decided on April 2, 1941, but that case is not in line with the authorities. The Circuit Court of Appeals for the Tenth Circuit in the case of Jewel Tea Co. v. Williams et al., 118 F.2d 202, 207, handed down an opinion on March 6, 1941, announcing the principles which should control in the case at bar. That court said:

"Where goods are ordered and shipped in interstate commerce to meet the anticipated demands of customers without a specific order therefor from the customer and the goods come to rest in a warehouse, the interstate commerce ceases when the goods come to rest in the state. It does not continue until the demand eventuates in the form of an order and the merchandise is delivered to the retailer."

"The mere fact that an anticipated local transaction causes a movement in interstate commerce is not sufficient to constitute the local transaction a part of interstate commerce." Citing language of U. S. Supreme Court in Schechter Poultry Corporation v. United States, 295 U. S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A. L.R. 947.

This leaves for consideration the matter of drop shipments. If the allegations of plaintiff's amendment to the amended complaint, which is adopted by the interveners, is taken at its face value, these drop shipments were taken from the freight depot by the defendant's employees, or were delivered to the warehouse by public drayman, and there came to rest. The defendant's testimony is uncontradicted that while orders were taken for these goods by the manufacturer's agent, from the retail merchant, that the goods were shipped to the defendant, were charged to his account, were subject only to delivery to the retail merchant if his credit at that time justified it, or he paid upon delivery, and that the shipments at all times were the property of the defendant until the delivery was made; and that delivery was never made until delivery was approved by someone in authority. These shipments having come to rest in the warehouse of the defendant, or by delivery to its agents or employees, they lost their interstate commerce character.

However, if it be conceded that these drop shipments did not lose their interstate commerce character yet their volume as compared to the whole business performed by the defendant is so small that the doctrine of de minimis non curat lex applies. National Labor Relations Board v. Fainblatt, 306 U.S. 601, 307 U.S. 609, 59 S.Ct. 668, 83 L.Ed. 1014, in the case of Goldberg v. Worman et al., D.C., 37 F. Supp. 778, 779, decided by Judge Strum, of the Southern District of Florida, on March 18, 1941, that court said: "This court fully recognizes the doctrine that the power of Congress to regulate interstate commerce is plenary and extends to all such commerce, be it great or small. National Labor Relations Board v. Gulf Public Service Co., 5 Cir., January 8, 1941, 116 F.2d 852. The amount of the commerce involved is significant, however, to the extent that Congress may be taken to have excluded commerce of inconsequential volume from the operation of its regulatory measure, by express provision or by fair implication. There is in the act no exclusion with respect to volume. Therefore, there is no limitation in that respect, except that to which the

courts will apply the maxim 'de minimis non curat lex'" citing National Labor Relations Board v. Fainblatt, supra, and National Labor Relations Board v. Gulf Public Service Co., supra.

In the case at bar the uncontradicted evidence establishes that the total of the drop shipments is not more than one-half of one percent of volume of business in dollars and cents, and in tonnage is so infinitesimal a part that it was impossible to estimate it. This case comes squarely within the doctrine of de minimis non curat lex, and even conceding that the drop shipments constitute interstate commerce, they are too insignificant for the court to notice.

In the case at bar it is the opinion of the court that neither the plaintiff and interveners, nor the defendant are engaged in interstate commerce within the purview of the Fair Labor Standards Act of 1938, or any amendment thereof, and therefore the cause is dismissed, and the defendant may have judgment for costs in accordance with law. The clerk will enter judgment accordingly.