## SHEPLER et al. v. CRUCIBLE FUEL CO. OF AMERICA et al.

### No. 1957.

District Court, W. D. Pennsylvania.

Feb. 3, 1943.

Schlesinger & Schlesinger, of Pittsburgh, Pa., for plaintiffs.

Jno. C. Bane, Jr., Nicholas Unkovic, and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa., for defendants.

SCHOONMAKER, District Judge.

This is an action filed in this court under the Fair Labor Standards Act of June 25, 1938, 29 U.S.C.A. § 201 et seq., for the recovery by plaintiffs from the defendants of compensation for alleged overtime in the course of their employment as watchmen over defendant Crucible Fuel Company's property at Singer's Landing, which was a floating barge located on the Ohio River in Pittsburgh; Shepler being employed as night watchman, and Rice as day landing man. Their employment began in the spring or summer of 1937, and ended May 1, 1942, when the Landing was discontinued by the defendant, Crucible Fuel Company.

At the trial, counsel for the defendant Crucible Steel Company of America moved to dismiss the complaint as to that company, and counsel for the plaintiffs offered no objection thereto. It was thereupon directed that the complaint be dismissed as to that company, and the trial proceeded as to the Crucible Fuel Company.

The question at issue is whether or not the Fair Labor Standards Act should be

applied in determining the wages to which these plaintiffs would be entitled from the defendant, Crucible Fuel Company.

By Section 6 of the Act, the prescribed minimum wages must be paid to each employee "who is engaged in commerce or in the production of goods for commerce." By Section 7, overtime compensation must be paid to such employees. Section 3(j) of the Act provides that "For the purposes of this act an employee shall be deemed to have been engaged in the production of goods if such employee was employed * * * in any process or occupation necessary to the production thereof, in any State."

The Crucible Fuel Company is engaged in the business of mining coal. It owns a mine at Crucible on the Monongahela River in Greene County, Pennsylvania; and from that point ships its mined coal in its own barges to three steel plants of the Crucible Steel Company located on the banks of the Monongahela and Ohio Rivers. These coal barges are towed to the steel plants by two tow steamboats owned and operated by the defendant Crucible Fuel Company. In the course of these towing operations, Crucible Fuel Company maintained a floating dock or landing on the Ohio River, known as "Singer's Landing", consisting of ice-breakers, two flat boats—(a fuel flat and a mooring flat), a house-boat and a pump-boat,—all moored to the ice-breakers.

Defendant Crucible Fuel Company used this landing as a temporary mooring for its barges, both loaded and empty, when the convenience of said Fuel Company made it desirable or necessary to leave barges there. This landing was also used by the other river-boat owners and operators for the same purpose, without charge therefor, in accordance with an established river custom. Among such operators was the Hillman Transportation Company which moved barges between October 24, 1938, and April 28, 1940, some of which were loaded with coal en route to interstate transportation.

Plaintiff Shepler was night-landing man in charge of this landing from 6 P. M. to 6 A. M. His duties were to protect the equipment comprising the landing, and all craft moored there, from trespass and injury. He was required to inspect all moored barges at hourly intervals and to pump out any excess of water accumulated in any barge, to see that lights required by law were kept burning. He was also required to keep a log-book of occurrences at the landing. Plaintiff Rice had the same duties each day from 6 A. M. to 6 P. M.

The coal mined by the Fuel Company does not itself pass into interstate commerce. It is mined in Pennsylvania and delivered in Pennsylvania to the Crucible Steel Company, which transforms it at its steel mills into coke and in that form is used by the Crucible Steel Company to charge its furnaces in the process of manufacturing iron and steel, which products are sold and delivered by the Steel Company in interstate commerce. Practically all of the capital stock of the Fuel Company is owned by the Crucible Steel Company.

On these facts it is our view that plaintiffs were engaged in occupations "necessary to the production" of iron and steel which go into interstate commerce. Without fuel the furnaces of the Steel Company could not operate at all. The fact that the Steel Company uses as a medium for getting that fuel to its furnaces a wholly-owned and controlled subsidiary corporation, the Crucible Fuel Company, does not withdraw the employees of that subsidiary corporation from the provisions of the Fair Labor Standards Act. Those engaged in the mining of coal and transporting it from the mines to the furnaces are engaged in an occupation "necessary to the production of goods for commerce." Whether they work for the Steel Company directly, or for a wholly-owned subsidiary, can make no difference, because without fuel you cannot operate a furnace in a steel mill.

In our opinion, this case falls squarely within the ruling of the Supreme Court in Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638, holding that employees of an owner of a building who were engaged in its maintenance and operation, were engaged in an "occupation necessary to the production" in interstate commerce, where the tenants of the building were engaged principally in the production of goods for interstate commerce. In the instant case, I would say the necessity is much stronger than in Kirschbaum Co. v. Walling, supra, because you cannot make steel at all without heat in the furnaces; and the Fuel Company is owned by the Steel Company.

■ We therefore conclude that the Fair Labor Standards Act of 1938 is applicable to plaintiffs as employees of defendant Fuel Company.

In arriving at this conclusion, we attach no significance to the fact that barges of coal belonging to other companies, and destined to go into interstate commerce, were occasionally tied up to defendant Fuel Company's landing without charge.

It next remains to be determined whether by applying the Fair Labor Standards Act to the facts of this case, the plaintiffs are entitled to any recovery. This Act was enacted June 25, 1938, and went into effect one hundred and twenty days from the date of its enactment, or on October 24, 1938. From the summer of 1937 until December 1, 1938, plaintiffs were paid monthly salaries; Rice receiving $200 per month, and Shepler, $190 per month.

Late in November 1938, defendant Crucible Fuel Company concluded that in order to comply with the Fair Labor Standards Act, the wages of the plaintiffs should be computed and paid on an hourly basis. Accordingly from December 1, 1938, until May 1, 1942, when this landing was discontinued and these plaintiffs were dismissed, their wages were computed on an hourly basis for a forty-hour week, with time and one-half for all hours over forty hours in each week. The hours worked by each plaintiff were recorded in a time-book signed by each plaintiff weekly. The rate per hour was fixed for Shepler at 46¢ for the first forty hours of each work week, and 69¢ per hour for all hours worked over forty hours each week. The rate fixed for Rice was 48.4¢ per hour for the first forty hours of each work week, and 72.6¢ per hour for all hours worked over forty hours each week. Beginning April 1, 1941, seamen employed on river craft in the Pittsburgh district were given a wage increase of 80¢ per day. Accordingly the wages of plaintiffs were increased by adding 6¢ per hour to the ordinary hourly rate of each man, and 9¢ per hour on the overtime rate. The daily work-day was fixed at eleven hours per day; and from January 1, 1942, to May 1, 1942, when the landing was discontinued, each man was permitted to be absent from work on one day per week, but was paid as though he worked the usual eleven hours that day.

At the time the change was made from the monthly rate basis of pay to the hourly basis, the plaintiffs were told by Ritts, who had charge of the River Transportation of the Fuel Company, that in order to comply with the Fair Labor Standards Act, the Company must transfer them from monthly to hourly wage rates on the basis of eleven hours per day on a seven-day week basis; that if that arrangement was not satisfactory to them, it would be necessary for the Fuel Company to add at least one man, and possibly two additional men, to work at this landing, which would result in a decrease of the hourly pay for time and over-time. The plaintiffs objected to additional men, and stated they preferred to work their established schedule of hours at the new hourly rates.

■ On these facts we are of the opinion that defendant Fuel Company has discharged its obligations to the plaintiffs under the Fair Labor Standards Act, and that the plaintiffs can recover nothing in this case. Under the Fair Labor Standards Act, the parties may legally agree upon the regular rate to be paid by the employer to the employee, so long as that rate equals, or exceeds, the minimum required by the Act. See Walling v. A. H. Belo Corporation, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716.

■ That is just what the parties did in the instant case. They agreed upon an hourly rate on the basis of a forty-hour week, at a rate which exceeded the minimum required by the Act, and agreed upon time and a half for all work beyond the forty-hour week period. True it is that both plaintiffs testified that they did not agree to the new hourly rate. But from all the evidence in the case, we must find that they did agree to it. In fact, by continuing to work under the new arrangement, a new contract was created. See Williams v. Jacksonville Terminal Co. 315 U.S. 386, 62 S.Ct. 659, 86 L.Ed. 914.

■ And finally, as to plaintiffs' claim for an extra hour's wages covering their luncheon periods, we find no merit in this contention. Certainly, a claim for wages for that period is not a claim for wages under the Fair Labor Standards Act, as we find no provision therein for payment of wages for a luncheon period.

Our findings of fact and conclusions of law are filed herewith. An order for judgment dismissing the complaint may be submitted on notice to opposing counsel.