RICHARD WILEY, KEITHEL H. HARRIS, GEORGE McGEHEE, AND ROBERT BRADLEY, RESPONDENT v. STEWART SAND & MATERIAL COMPANY, A CORPORATION, APPELLANT.—206 S. W. 2d 362.

Kansas City Court of Appeals.   Opinion delivered November 10, 1947.

*Warrick, Brewer* and *Lamkin,* and *Oscar S. Brewer, Charles F. Lamkin, Jr.,* for appellant.

*Mason A. Ramsey* and *Claude L. Schenck* for respondents.

CAVE, P. J.—Plaintiffs recovered a judgment below for overtime compensation, liquidated damages and attorneys' fees in a total amount of $1,307.72, in an action brought under the Act of Congress, commonly known as the Fair Labor Standards Act of 1938. (29 U. S. C. A. Secs. 201-219, 52 Stat. 1060, et seq.) We shall refer to the parties as they were in the trial court. At the

close of the case the court overruled defendant's motion for a directed verdict against each respondent (plaintiff), and then held there were no issues of fact to be decided and discharged the jury, and in due time rendered the judgment appealed from.

We are immediately confronted with a motion to dismiss the appeal because: (1) Plaintiffs' brief fails to state all the evidence, and contains argument and conclusions; (2) the appeal is not taken from an appealable judgment or order; (3) that defendant's statement of facts is so incomplete that the plaintiffs are required to make an additional statement of facts to present a complete picture; (4) defendant has failed and neglected to stipulate as to defendant's exhibits "C" and "D" being filed separately or incorporating same in transcript as provided by rule 1.05.

We have examined the statement of facts in defendant's brief and find that it covers 10 pages, and are of the opinion that the statement is "fair and concise" as required by rule 1.08. In their motion plaintiffs do not point out any omitted material fact and we find none. The statement is sufficient to give this court a clear understanding of the issues to be decided. There is no merit in this contention.

The notice of appeal recites that the defendant is appealing "from the judgment entered in this action on the 12th day of June, 1946." The record discloses that the judgment was entered March 4, 1946, and on March 14 defendant filed its motion for judgment in accordance with its motion for a directed verdict, or, in the alternative, for a new trial. The court overruled the foregoing motion on June 12, 1946, and the notice of appeal was filed on June 18. The notice of appeal is sufficient under the new Civil Code. Park v. Park, et al., 190 S. W. (2d) 285; Weller v. Hayes Truck Lines, 197 S. W. (2d) 657. In the Weller case the Supreme Court en banc held a notice of appeal sufficient which recited that the appeal was taken "from the order and judgment overruling defendant's motion for new trial * * *; while in the instant case the notice recited that the appeal is taken "from the judgment." There is no merit in this contention.

The third ground for dismissal is disposed of by our holding that defendant's statement of facts is sufficient. With reference to the fourth ground for dismissal, we find that exhibits "C" and "D" have been filed with the clerk of this court and are now available for use and inspection; and the failure of the defendant to stipulate with the plaintiffs concerning the same would not justify a dismissal of the appeal. Plaintiffs' motion is overruled.

Defendant concedes there are no issues of fact in dispute. It makes the one contention that under the undisputed facts and the law the court should have sustained its motion for a directed verdict. Plaintiffs contend the judgment is correct because it is con-

ceded: (1) That the crushed rock which they assisted in producing was sold to contractors who used it in the construction and repair of highways, and also sold to the Missouri Pacific Railroad Company, which used it for the repair and maintenance of its roadbed, *all done in the State of Missouri;* (2) that some of the crushed stone produced by them was sold and delivered by defendant to customers in the State of Kansas.

The record discloses that the defendant operated a rock mine or quarry at Pixley, Missouri. The plaintiffs were employed there, for all periods for which they claimed compensation, as powderman's helpers, or as drillers, with the exception of two months in the case of Bradley, when he worked as a mine foreman. They worked on the night shift and assisted in blasting out rock, which was carried out by others the next morning to the two rock crushers maintained at the plant, where the rock was crushed to various sizes and then sold as above indicated. Neither defendant nor any of its employees had any part in the placing of the rock in or upon the highways or railroad bed.

We shall first consider the question whether the fact that defendant produced crushed stone at its quarry and sold the same to independent contractors who used it for the construction, repair and maintenance of highways at various points within the State of Missouri, and was sold to the Missouri Pacific Railroad Company f. o. b. at plaintiffs' plant, which company used the stone to repair and maintain its roadbed within the State, brings the defendant and these employees within the provisions of the Fair Labor Standards Act.

Plaintiffs contend they are employees "engaged in the production of goods for commerce within the meaning of Sec. 3 (j) of the Act. because the services of respondents are indispensable to the production of said rock which flow into the arteries and highways of this State and are not in any sense 'very remote' but bear a close and immediate tie to commerce. * * * This rock was used to construct necessary arteries for interstate travel. * * * All that is required is that, in fact, there be a 'close and immediate tie' between the activities of appellant's employees and the use of said highways and railroads in commerce. * * *"

Can the judgment be sustained on this theory? We think not.

Sec. 7 of the Act makes the provisions relating to maximum hours applicable to two classes of employees. They are those engaged in commerce and those engaged in the production of goods for commerce. And Sec. 3 (j) provides that: "An employee shall be deemed to have been engaged in the production of goods (for commerce) if such employee was employed * * * in any process or occupation necessary to the production" of goods for commerce. No rule of thumb has yet been enunciated either by Congress or

the courts by which it can be determined in every case whether the employee was engaged in the production of goods for commerce, within the meaning of the Act. Each case depends upon its own facts. However, certain general guides have been blueprinted. It is not necessary that the employee himself take part in the physical process of the making of the goods. It suffices if his work constitutes a part of the integrated effort by which goods are produced for commerce. Stated otherwise, it is enough if the work of the employee has such "close and immediate tie with the process of production of commerce" that it is in effect a part of it. Kirschbaum v. Walling, 316 U. S. 517, 86 L. Ed. 1638; Warren-Bradshaw Co. v. Hall, 317 U. S. 88, 87 L. Ed. 83; Armour & Co. v. Wantock, 323 U. S. 126; Borden Co. v. Borella, 325 U. S. 679; Schroeder Co. Inc. v. Clifton, et al., 153 F. (2d) 385.

In the Schroeder Company case, supra, the court said (388): "Congress did not intend in the enactment of the Act to exert the full measure of its commerce power. Instead, it was purposed to leave local business to the protection of the states, and courts are not free to absorb by judicial process essentially local activities which Congress in the exercise of its judgment did not see fit expressly by fair implication to bring within the scope of the Act." (Citing cases.)

Sec. 3 (b) of the Act defines commerce to mean: "Trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof." This definitive provision is merely declaratory of the generally understood and accepted meaning of interstate commerce as applied to goods and products, namely, their movements across state lines. It is thus manifest that every employee engaged in the production of goods or in a process or occupation necessary to such production, is not necessarily within the coverage of the Act. In order to come within its coverage, an employee must be engaged in the *production* of goods for commerce, or in a process or occupation necessary to such *production*. The very language of the Act relating to the production of goods for commerce seems to make it clear that the particular work of the employee, or the integrated effort of which his service is a part, must have for its purpose the *production of goods for transportation in commerce. Some goods or some commodities must be produced for movement in commerce.* In Kirschbaum Co. v. Walling, supra, it was held that engineers, firemen, elevator operators, porters, carpenters, electricians and watchmen employed in their respective capacities in connection with the maintenance of a loft building were engaged in the production of goods for commerce. *But clothing was manufactured in the building and sold for movement in interstate commerce.* The same underlying principle was followed in Warren-Bradshaw Co. v. Hall, supra;

Armour & Co. v. Wantock, supra; the Borden Co. v. Borella, supra, and Walton v. Southern Package Co., 320 U. S. 540 . The essence of the holding in those cases is that the porters, elevator operators, watchmen, etc., bore such a close and immediate tie with the process of the *production of goods* for commerce that they were an essential part of it within the meaning of the Act; goods were actually produced in the buildings for interstate shipment. But in 10 East 40th Street Co. v. Callus, 325 U. S. 578, the employees were elevator starters and operators, window cleaners, watchmen, and other maintenance workers employed in a building rented to tenants for an unrestricted variety of office work *but no manufacturing was carried on within it;* and it was held in effect that the business of renting office space in a building of that kind for all the usual miscellaneous catalogue of offices satisfies the common understanding of local business and that the maintenance and operation of employees were engaged in local business, not the *production of goods* for commerce within the meaning of the Act.

In the instant case the plaintiffs were engaged in work, the purpose of which was, to produce rock for use on the highways and railroad beds within the State of Missouri. The rock was sold to various contractors at the plant, and neither these plaintiffs nor any of defendant's employees participated in placing the rock in or upon the highway or railroad bed. The mere fact that goods produced by others for interstate commerce may be transported over the highways or the railroad tracks, will not bring these plaintiffs within the purview of the Act. Their work was not directed to the *production* or *manufacture* of anything for commerce, within the meaning of the Act. They were engaged in local business. 10 East 40th Street v. Callus, supra; Rucker v. First National Bank of Miami, Okl., 138 F. (2d) 699.

Plaintiffs direct our attention to the cases of Walling v. Amidon, 153 F. (2d) 159; Shepler v. Crucible Steel Co., 60 F. Supp. 260; Walling v. People's Packing Co., 132 F. (2d) 236; Wagner v. American Serv. Co., 58 F. Supp. 32. A reading of those cases will readily distinguish them from the facts in the instant case. Such cases are simply variations of the situation where the employee's work is so closely integrated *with the manufacture of goods which will move in interstate commerce,* as to be a part of such manufacture. They plainly do not apply where the goods sold came to rest by the agency of others within the state of manufacture as a part of railroad beds and of highways which were merely instrumentalities of commerce.

Probably the leading Missouri case on the point is Fountain v. St. Joseph Water Co., 352 Mo. 817, 180 S. W. (2d) 28. In this case the issue was whether plaintiffs, who were employed in all branches of the defendant's water business, were covered by the Fair Labor Standards Act. The water company took water from the Missouri

River and pumped it to settling basins where it was filtered, purified and sterilized. The water was then pumped into holding basins from whence, by gravity, it entered the defendant's water mains. Defendant's industrial customers carrying on interstate business included six railroads, the Swift and Armour packing companies, the Quaker Oats Company, Douglas Candy Company, and others engaged in bottling soft drinks, making vinegar and manufacturing chemicals. Plaintiffs asserted they were engaged in an occupation necessary to · the production of goods for interstate commerce.

The Supreme Court stated, with reference to the question of · production of goods, l. c. 30, 31, 33, (25-26):

"It is also settled that the 'provisions of the Act expressly make its application dependent upon the character of the employee's activity,' rather than upon the general interstate or intrastate nature of the employer's business. * * * The basis of the Act is the Commerce Clause of the Constitution of the United States. However, the United States Supreme Court has called attention to the fact that 'Congress did not exercise in this Act the full scope of the commerce power'; that it did not intend that it be 'extended to business or transactions *affecting commerce* only'; and that it 'plainly indicated its purpose to leave local business to the protection of the states.' * * *

"Furthermore, whether or not defendant is within this exemption, we think that the activities of its employees in connection with its business of taking, processing and selling water, so far as the evidence discloses them, were too remote from 'the production of goods for commerce' to bring them within the Act. * * *

" 'We cannot believe that the man who produces waste or lubricating oil which is eventually sold to lubricate the axles of a railway car, or the employees of a local water company which sells water for locomotives, are to be regarded as producing goods for interstate commerce within the meaning of this Act. A manufacturer of paint would not be held to be producing goods for interstate commerce solely because he sold 1.3% of his product to a railroad company and that company used the paint to paint refrigerator cars. To use the language of causation, the connection with interstate commerce is too remote' (quoting with approval Couch v. Ward, 205 Ark. 308, 168 S. W. (2d) 822, 825)."

We conclude that the mere fact that plaintiffs were engaged in the production of rock to be used on the highways and railroad beds within the State of Missouri, does not bring them within the Fair Labor Standards Act. They were not engaged in commerce or in the *production* of goods for commerce. We are supported in this conclusion by an interpretation of the Act given by the Wage and Hour

Division of the Government which is charged with its enforcement. The relative part of the interpretation follows:

"Employees engaged in producing materials such as sand, gravel, asphalt, concrete, macadam or railroad ties, to be used solely within the state in the construction, maintenance, repair, or reconstruction of essential instrumentalities of commerce do not become subject to the Act merely by reason of the use to which such products are put. A typical case is that of an employer who has contracted to repair a highway and has leased a gravel pit near the location of the job. In the pit his employees are engaged solely in digging gravel which is to be used within the state in the repair of the highway. Such employees are not 'engaged in commerce' since their operations are of a local nature and are distinct from the construction, repair and maintenance activities in which the materials are used. Neither are such employees engaged in producing goods for commerce."

While the interpretations placed upon laws by the governmental agencies charged with their enforcement are not binding on the courts, they are entitled to serious consideration by the courts, and by those whose activities are subject to the laws.

We shall now discuss the question whether they come within the act because some of the rock produced found its way to customers in the State of Kansas. Concerning this question the parties, by stipulation filed in the cause, agreed upon the following facts: That the appellant, during the period in controversy, delivered asphalt to Ft. Leavenworth, Kansas, in the quantities, and on the dates as follows: May 27, 1941, 10 tons; November 11, 1941, 10 tons; November 17, 1941, 15 tons; that the rock used in the manufacture of all the asphalt in the foregoing deliveries was produced at the plant at Pixley, Missouri, the exact dates of production being unknown; that the larger part of the asphalt used by the defendant was purchased in Kansas, the concrete in Kansas and Missouri, the dynamite and powder from the Du Pont Company's branch at Carl Junction, Missouri, and that appellant's concrete plant was located at First and Grand, Kansas City, Missouri; that there were no shipments of crushed stone or concrete into Kansas during the period in controversy other than as shown at the pre-trial conference (respondents' exhibit 6G) and other than crushed stone and lime in the quantities and on the dates as follows: To Kansas City, Kansas, February 19, 1941, 5 tons of lime; January 6, 1941, 27 yards of crushed stone; January 26, 1941, 47 yards of crushed stone, and May 26, 1941, 7 tons of crushed stone, billed to a person in Kansas City, Kansas, f. o. b. the Pixley plant; that the appellant did no advertising without the State of Missouri and none within the State except indirect institutional advertising such as in connection with the Kansas City Real Estate Board which did not direct attention to individual firms. The total amount of material

delivered by defendant across the state line, as disclosed by all the evidence, is as follows: 257 tons of asphalt to residents of Johnson County, Kansas; 105 tons of Pixley mined rock contained in the concrete shipped from the plant at First and Grand, Kansas City, Missouri; 35 tons of asphalt to Leavenworth, Kansas; 86 tons of lime or stone shipped to Kansas City, Kansas, and approximately 90 tons of asphalt transported by one C. C. Moody during the fall of 1941 to Leavenworth, Kansas. The foregoing totals 191 yards of stone and 382 yards of asphalt, containing a maximum of 86% of stone or 328 yards, a grand total of 519 yards of crushed stone produced at the Pixley plant. It is undisputed that in the year 1941 the Pixley plant produced 388,000 tons of crushed stone; that the two rock crushers had a daily capacity of 1500 to 1800 tons. Thus only about 1/8 of 1% of the plant's total production for the year, or less than three hours' full production of its rock crushers, found its way into interstate shipment. The president of defendant corporation testified that he had given instructions not to solicit business in Kansas and to avoid deliveries in that state.

We fully recognize the doctrine that the power of Congress to regulate interstate commerce is plenary and extends to all such commerce, be it great or small. The amount of the commerce involved is significant, however, to the extent that Congress may be taken to have excluded commerce of inconsequential volume from the operation of its regulatory measure. There is in the act no specific exclusion as to volume. But the courts have frequently held that where the volume is so inconsequential or so occasional that Congress did not intend to include such transactions, and have applied the maxim "de minimis non curat lex." Thus the Supreme Court of the United States, in discussing the Wagner Act, National Labor Relations Board v. Fainblatt, 306 U. S. 601, 83 L. Ed. 1014, 1019, said:

"Examining the Act in the light of its purpose and of the circumstances in which it must be applied, we can perceive no basis for inferring any intention of Congress to make the operation of the Act depend on any particular volume of commerce affected *more than that to which courts would apply the maxim de minimis.*" (Italics supplied.)

In the very recent and somewhat famous case of Anderson v. Mt. Clemens Pottery Co., 90 L. Ed. 1114, the Supreme Court recognized the de minimis rule, and said (1121):

"We do not, of course, preclude the application of a de minimis rule where the minimum walking time is such as to be negligible. The workweek contemplated by Sec. 7 (a) must be computed in light of the realities of the industrial world. When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working

conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved. The de minimis rule can doubtless be applied to much of the walking time involved in this case, but the precise scope of that application can be determined only after the trier of the facts makes more definite findings as to the amount of walking time in issue.''

The following are other cases in which the de minimis rule has been applied: James Reuter, Inc. v. Walling, 137 F. (2d) 315 (5% of defendant's total sales of fresh fruit and vegetables moved in interstate commerce); Hill v. Jones, 59 F. Supp. 569 (1% of total sales moved into interstate commerce); Sapp v. Horton's Laundry, 56 F. Supp. 901 (production resulting from 203 hours' work over three-year period passed into interstate commerce held subject to the rule); Spier v. Gulf Coast Beverages, 50 F. Supp. 653 (1.004% of defendant's production of soft drinks moved in interstate commerce); Rauhoff v. Henry Gamling Co., 42 F. Supp. 754 (½ of 1% of dollar volume and infinitesimal portion of tonnage moved in interstate commerce); Goldberg v. Worman, 37 F. Supp. 778 (3% of defendant's bakery products moved in interstate commerce.)

We do not mean to hold that the amount of goods moving in interstate commerce is the sole and only test, but is a fact to be taken in connection with other facts in determining whether the *de minimis* rule should be applied. In this case the interstate shipments were so inconsequential in volume and value and were made so infrequently that we think the ''de minimis'' rule should be applied.

Plaintiffs rely on the cases of Walling v. People's Packing Company, 132 F. (2d) 236, and Wagner v. American Service Company, 58 F. Supp. 32. In the Walling case the defendant owned and operated a plant in Oklahoma in which it engaged in the slaughtering of animals for market. All the meat from the slaughtered animals was sold in Oklahoma, but the offal and hides were sold to regular customers and to processors outside the State of Oklahoma. The court held that the mere fact that the employer shipped interstate only a small percent of the value of the carcasses, would not exclude it from the Act. But we think that ruling is based fundamentally on the further fact that the employer, *regularly, and as a settled policy,* shipped the hides and offal in interstate commerce. The court was not considering a set of facts where an employer occasionally transports an infinitesimal amount of its goods in interstate commerce. The Wagner case, and there are others of a similar nature, are what is sometimes known as the ''ice cases.'' Such cases are discussing a set of facts where an ice company supplies ice to railroads and express cars, etc., for the preservation of goods which are being transported interstate. That line of cases is so ably distinguished by the opinion in Schroeder v.

Clifton, supra, we will not lengthen this opinion by reiterating such distinction. Opinions in other cases cited by plaintiffs are founded on the question whether the employer is a retailer. Those cases have no direct bearing upon the question now under discussion. We will not discuss or decide that issue.

It is our conclusion that the evidence in this case is insufficient to bring the parties within the purview of the Fair Labor Standards Act, and that the trial court should have directed a verdict for the defendant.

It follows that the judgment should be reversed. It is so ordered. All concur.