**FEDERAL EXPRESS CORPORATION,**
Appellant,

v.

**Jayne Ann WOODS, Commissioner of Revenue, State of Tennessee,**
Appellee.

Supreme Court of Tennessee.

July 17, 1978.

Erich William James, Jerred G. Blanchard, Jr., Memphis, for appellant; Waring, Cox, James, Sklar & Allen, Memphis, of counsel.

Brooks McLemore, Jr., Atty. Gen., William J. Haynes, Jr., Asst. Atty. Gen., Nashville, for appellee.

OPINION

HENRY, Chief Justice.

This action, brought pursuant to Section 67–2301, T.C.A., et seq., seeks to recover $117,125.55 in use taxes and interest paid under protest. Federal Express Corporation, an interstate air carrier, takes the position that its use of aircraft parts and materials on which the tax was assessed is exempt from taxation under Section 67–3012, T.C.A. Federal Express does not contest the State's right or power to levy the tax. The sole issue facing this Court is whether appellant is entitled to the statutory exemption.

I.

Federal Express is a Delaware corporation with its principal office in Memphis, Tennessee, where it also stores and maintains its fleet of 52 aircraft and the parts used to repair them. It conducts an express parcel package shipping business to more than seventy cities throughout the United States.

Its main offices, originally located in Arkansas, were moved in February 1973 to Memphis, which offered a more favorable site from which to operate Federal Express' unique "hub and spokes" system. Under

this method of operation all packages carried by Federal Express pass through a central "hub," the principal office in Memphis, where they are unloaded, sorted according to destination, and put on aircraft scheduled to stop in the city of a package's destination. Thus, every flight is scheduled either to originate or terminate in Memphis. Additionally, under this system, every flight either originates or terminates in a state other than Tennessee.

Federal Express schedules service so that all inbound flights are full upon arrival in Memphis and each outbound flight is full upon departure. The president and chief operating officer of the company described Federal Express' operation as follows:

> [I]f you look at Federal Express like a laundry service and assume that the big laundry is in Memphis, we schedule flights on the basis that we don't care if we pick up one sheet or one pillow case in Syracuse as long as we arrive at the laundry filled.

> So, we would route an aircraft . . from Syracuse to Detroit to Lexington to Nashville to Memphis to assure arrival full. And by the same token an outbound flight would be filled and routed in a way that was more or less a straight line out to [the] ultimate destination as well.

During the audit period, February 1973 through May 1974, appellant served three Tennessee cities: Chattanooga, Memphis and Nashville. Although the bulk of its business was interstate and all flights were scheduled to pass between Memphis and a city in another state, Federal Express did carry some packages whose origin and destination both lay within Tennessee.[1] The number of such packages and amount of revenues they produced were apparently very small in relation to the total size of appellant's business.[2]

In 1975, the State assessed, and Federal Express paid under protest, $117,125.55 in tax and interest upon appellant's use of parts and materials to service and maintain its aircraft in Memphis. Federal Express instructed its agents in Tennessee not to accept any packages for delivery to another Tennessee city and brought this action, claiming an exemption under Section 67–3012, T.C.A.

Paragraph eight of Section 67–3012 reads as follows:

> There shall also be exempt from sales or use tax, use, storage, or consumption, of parts, accessories, materials and supplies to or by commercial interstate or international air carriers, *who perform no intrastate carrier services,* for use exclusively in servicing and maintaining such carrier's aircraft, *which aircraft are used exclusively in interstate or international commerce.* (Emphasis supplied.)

The State argued that the deliveries of packages from one Tennessee city to another, although the entire flight on which the package was carried was interstate in nature, constituted "intrastate carrier services" so that Federal Express' aircraft were not "used exclusively in interstate . . . commerce."

The chancellor held that Federal Express was not entitled to exemption from the use tax under Section 67–3012 because "while it was engaged almost exclusively in interstate commerce it did provide a small amount of intrastate services during the tax period."

## II.

Federal Express advances three arguments in support of its position that its use

---

1. For example, a package from Chattanooga for delivery in Nashville would be picked up on a flight originating in Newark, New Jersey, going through Harrisburg, Pennsylvania; Chattanooga; and Memphis. It would depart Memphis on a flight passing through Nashville (where the package would be delivered) and continuing on to Louisville, Kentucky, and Dayton, Ohio.

2. For the ten months during the audit period for which figures are available, revenues derived from shipments of packages between Tennessee cities ($5,982.02) constituted only .06% of Federal Express' total revenues ($10,553,506). The number of packages carried between Tennessee cities (739) was only .07% of the total number of packages flowing through the entire system (1,049,832).

of aircraft parts should be exempt under the statute. It first argues that it did not perform intrastate carrier services within the meaning and contemplation of Section 67–3012. Second, even if it was engaged in intrastate services under the statute, the small volume of packages flowing between Tennessee cities and the minute amount of revenues derived therefrom warrant the application of the maxim *de minimis non curat lex,* allowing the courts to ignore the intrastate shipments for purposes of the exemption. Third, Federal Express urges this Court to construe the phrase "no intrastate carrier services" to mean "no *substantial* intrastate services."

The problem is essentially one of statutory construction. The rules to be followed in construing statutes granting exemptions from taxes are clear.

Generally, laws imposing taxes are construed strongly against the taxing authority, with any doubt or ambiguity being resolved in favor of the taxpayer. *Crown Enterprises, Inc. v. Woods,* 557 S.W.2d 491 (Tenn.1977); *White v. Roden Electrical Supply Company, Inc.,* 536 S.W.2d 346 (Tenn.1976).

When the question, however, is one of whether a taxpayer is exempt from a tax, the exemption statute must be construed against the individual claiming the exemption. *Crown, supra; Smoky Mountain Canteen Co. v. Kizer,* 193 Tenn. 598, 247 S.W.2d 69 (1952). Exceptions from taxation must positively appear and will not be implied. *Hall Contracting Corp. v. Tidwell,* 507 S.W.2d 697 (Tenn.1974); *Tennessee Blacktop, Inc. v. Benson,* 494 S.W.2d 760 (Tenn. 1973).

As this court stated in *American Bemberg Corp. v. City of Elizabethton,* 180 Tenn. 373, 378, 175 S.W.2d 535, 537 (1943):

> Exemptions from taxation are contrary to public policy and can only be allowed when granted in clear and unmistakable terms. They are not creatures of intendment or presumption. If the language in which they are claimed to be granted leaves it doubtful, the benefit of the doubt must be given to the State, the life of which is taxes.

As stated in *Crown, supra* at 493, the fundamental rule of statutory construction is "to ascertain and give effect to the intention or purpose of the legislature as expressed in the statute." This intent is gathered from a reading of the statute giving the language and words used their natural, ordinary and commonly accepted meaning. The language must be considered in the context of the entire statute without any forced or subtle construction extending its import. *Worrall v. Kroger Co.,* 545 S.W.2d 736 (Tenn.1977); *Metropolitan Government of Nashville & Davidson County v. Motel Systems, Inc.,* 525 S.W.2d 840 (Tenn.1975).

Before a taxpayer is entitled to exemption under paragraph eight of Section 67–3012, it must "perform no *intrastate* carrier service." Although Federal Express is primarily engaged in an interstate operation, this does not make its entire business interstate. A business may be engaged in transactions of both types; the character of an activity is determined by the particular transaction involved. *Burton Explosives, Inc. v. Strider,* 25 Tenn.App. 440, 158 S.W.2d 731 (1941).

The word "intrastate" is defined in *Webster's Third New International Dictionary* (1976) as meaning "existing within a state." *See also David Cabrera, Inc. v. Unión de Choferes y Dueños,* 256 F.Supp. 839 (D.P.R. 1966); *State v. Western Transportation Co.,* 241 Iowa 896, 43 N.W.2d 739 (1950); *American Airlines, Inc. v. Battle,* 181 Va. 1, 23 S.E.2d 796 (1943). The same text defines a carrier as an "individual, partnership, corporation, or any organization engaged in transporting passengers or goods for hire by land, water, or air." In light of the clear, common and ordinary meaning of the phrase "intrastate carrier service," we cannot say that a carrier intending to and actually providing a service by which goods are transported between two points within Tennessee does not perform "intrastate carrier services" under the terms of the statute.

Federal Express argues that, because its "hub and spokes" system is different from

the point-to-point system employed by other air carriers, it is not engaged in intrastate service despite the fact that it carries packages from one Tennessee city to another. It insists that intrastate service "entails the actual scheduling of a flight from one point in Tennessee to another point for the purpose of transporting passengers or freight between these points." As we see it, this is, in effect, what Federal Express did. The fact that it provided service from one Tennessee city to another in a unique manner or the fact that the flight on which intrastate packages were carried may have originated or would terminate in another state does not affect the nature of the individual service actually provided. It is immaterial that Federal Express, for business reasons, had no need to be concerned with a package's points of origin and delivery (other than when it was being sorted in Memphis) and therefore was unaware that it was carrying goods between two cities within Tennessee.

Likewise, the fact that the system under which Federal Express operates had not been developed or even contemplated at the time the legislature passed the exemption is persuasive. For this Court to say that the legislature intended or would have intended that the exemption apply under nonexistent circumstances whose future existence it could not have contemplated would allow by implication an exception to taxation contrary to the most fundamental rules of construction of exemption statutes.

Having determined that Federal Express was engaged in intrastate carrier service under Section 67–3012, we proceed to appellant's insistence that the Court apply the maxim *de minimis non curat lex,* or "the law cares not for trifles," and hold that its intrastate services are too insignificant for the Court to notice. This would be an improper case for the application of the doctrine, for by the words of the statute ("no intrastate carrier services," "exclusively in interstate commerce") intrastate activities are not to be ignored. Unlike the courts in the cases cited by appellant which have applied the *de minimis* doctrine when determining whether an inappreciable amount of interstate activity subjected an employer to the federal Fair Labor Standards Act of 1938,[3] this Court cannot infer that the legislature intended by implication to exclude from taxation a carrier providing an inconsequential amount of intrastate services.

Nor can this Court construe the phrase "no intrastate carrier services" to mean "no *significant,* or *substantial,* intrastate carrier services," as Federal Express urges. The words of the statute are plain and unambiguous. We can only assume that the legislature intended what it wrote and meant what it said. This conclusion is enforced by the phrase in the same sentence that a carrier's aircraft must be "used *exclusively* in interstate or international commerce." (Emphasis supplied.) To add the qualification that the intrastate services spoken of by the statute must be significant or substantial would be to clarify an inexistent ambiguity.

This Court recognizes that the results commanded by the statute seem harsh under the facts of this case, where transactions yielding only $6,000 in revenue result in almost twenty times that amount in use tax and interest. However, as this Court stated in *Miller v. Childress,* 21 Tenn. 320, 321–322 (1841):

> Where a statute is plain and explicit in its meaning, and its enactment within the legislative competency, the duty of the courts is simple and obvious, namely, to say *sic lex scripta* [so is the law written], and obey it.

Appellant's proper source of relief lies with the legislature.

The decision of the Chancellor is

Affirmed.

**3.** *Rauhoff v. Henry Gramling & Co.,* 42 F.Supp. 754 (E.D.Ark.1941); *McDaniel v. Clavin,* 128 P.2d 821 (Cal.App.1942); *Wiley v. Stewart Sand & Material Co.,* 240 Mo.App. 392, 206 S.W.2d 362 (1947).

**412**

COOPER and HARBISON, JJ., and RUSSELL, Special Justice, concur.

FONES, J., dissents.

FONES, Justice, dissenting.

I respectfully dissent.

The majority gives no consideration to what I see as the real substance of the exemption provided in the relevant paragraph of T.C.A. § 67–3012. Its purpose is to exempt parts and accessories used exclusively in servicing aircraft, "*which aircraft are used exclusively in interstate or international commerce.*" (Emphasis added.)

In short, in determining the legislative intent in the use of the phrase "intrastate carrier services," I think the controlling facts are the use of the aircraft and not the origin and destination of .07% of the packages involved in the Federal Express operation. It is conceded that Federal Express did not operate a single flight, during the period in question, that originated and terminated in the State of Tennessee. The majority of the passenger airlines that serve Tennessee cities are unquestionably, in my opinion, engaged exclusively in interstate commerce, in spite of the fact that most, if not all of said airline flights carry passengers who enplane in one Tennessee city and deplane in another Tennessee city, in the course of interstate flights originating in one state and terminating in another.

It is my opinion that the Legislature intended to exempt the aircraft of all airlines operating in the usual and customary interstate manner stated above. On the issue before us, I see no distinction between passengers and packages. It is clear to me that there is no valid factual distinction to be drawn between the operation of Federal Express and a passenger airline operation described above, insofar as whether or not either provides "intrastate carrier services."

I am convinced that Federal Express performs no intrastate carrier service and that its aircraft are used exclusively in interstate commerce.

I would reverse the Chancellor and award a recovery in favor of Federal Express in the sum of $117,125.55, plus interest.