**DAVID CABRERA, INC., a corporation and/or Superior Sand & Gravel, Inc., a corporation, Plaintiff,**

**v.**

**UNIÓN de CHOFERES y DUEÑOS de CAMIONES HERMANADOS de PUERTO RICO, and/or its officers and/or its members and/or Jose N. Bonilla, Defendant.**

**Civ. No. 207–66.**

United States District Court
D. Puerto Rico,
San Juan Division.

Aug. 17, 1966.

Ernesto Maldonado Perez, San Juan, P. R., for plaintiff.

Jose Perez Rodriguez, San Juan, P. R., for defendant.

## MEMORANDUM AND ORDER

CANCIO, District Judge.

This case has been brought before this Court on a complaint for "Injunction and Damages" filed by David Cabrera, Inc. against Unión de Choferes y Dueños de Camiones Hermanados de Puerto Rico (Union). Plaintiff Cabrera is in the business of furnishing sand, gravel and broken stone to the construction businesses in Puerto Rico. These products are obtained from the Puerto Rican shores of the North Coast of the Island and the beds of the rivers within the Commonwealth of Puerto Rico. In turn, the sand, gravel and stone are transported by independent contractors who belong to Union. Some of these independent contractors own and drive their own trucks. Others employ drivers for their trucks. Both, contractors and their employees, are members of Union. Plaintiff seeks to enjoin Union from any activity, peaceful (such as concerted refusal to work) or otherwise, that might interfere with his business.

Jurisdiction is alleged under 15 U.S. C.A. § 26 and 15 U.S.C.A. § 1 et seq. Plaintiff alleges that Union has interfered with interstate commerce by conspiring to control the construction industry in the Commonwealth of Puerto Rico, since the material processed by the plaintiffs are a basic ingredient of construction, together with other materials which move in interstate commerce.

In short, plaintiff alleges that the refusal of Union to carry his sand, stone and gravel interferes with interstate commerce since this is one of the ingredients of construction work, together with other ingredients which are imported into the Commonwealth. Hence, he claims, this Court has jurisdiction to entertain the matter.

At the outset, we may point out that to suggest jurisdiction based on these grounds is somewhat strained. However, plaintiff advances two arguments on this point. These are his exact words:

1. "Under the auspices of what part of the definition of the term 'commerce', as used in 15 U.S.C.A. sect 12, does Puerto Rico come, as of the date when it acquired Commonwealth Status?"

2. "Assuming *arguendo* that Puerto Rico is now the equal of a State, at least insofar as 15 U.S.C.A. sect 12 is concerned, are the plaintiffs dealing in interstate commerce as classically defined?"

Before briefly setting out plaintiff's argument on these points, it may be well to recall section 12 of Title 15 of the United States Code. It is there stated in its pertinent part, that:

"Commerce," as used herein, means trade or commerce among the several States and with foreign nations, or between the District of Columbia or any Territory of the United States and any State, Territory, or foreign nation, or between any insular possessions or other places under the jurisdiction of the United States, or between any such possession or place and any State or Territory of the United States or the District of Columbia or any foreign nation, or within the District of Columbia or any Territory or any insular possession or other place under the jurisdiction of the United States: *Provided,* That nothing in this Act contained shall apply to the Philippine Islands.

Plaintiff's argument regarding his first point, if we read it correctly, suggests, in a rather veiled fashion, two things:

1. That "when Congress uses the term 'territory' this may be meant to be synonimous with 'place' or 'area'."

2. That Puerto Rico is a territory within the meaning of 15 U.S.C.A. § 12.

■ In order to settle both of these points, it is completely unnecessary to delve into the question of the political status of Puerto Rico as a Commonwealth, as the plaintiff seems to suggest. It is obvious from 15 U.S.C.A. § 12 that Congress is not using the term "territory" in its broad meaning. Its use, together with the use within the same statute of the terms "State", "District of Columbia", "foreign nation", "insular possession" and "place under the jurisdiction of the United States", indicates the intent of Congress to be precise in the terminology used in this statute. The clear intent was to refer to territory in its political sense. We are governed by that intent in the interpretation thereof.

■ The second point is plainly erroneous. Whatever the political and juridical status of Puerto Rico may be, it is totally irrelevant to the case under consideration and we are not deciding this point in any manner. Public Law 81–600, 64 Stat. 319, was enacted as part of the progressive recognition by Congress of the right of the people of Puerto Rico to govern themselves. In so doing, Congress and Puerto Rico, in their compact, continued in effect section 9 of the Jones Organic Act, 39 Stat. 954, to the extent that *the statutory laws of the United States not locally inapplicable,* except as hereinbefore or hereinafter otherwise provided, *shall have the same force and effect in Puerto Rico as in the United States * * *.* 64 Stat. 319.

■ Thus, we are bound to view this particular law now under our consideration as having the same force and effect in Puerto Rico as in the United States,

for we have not found, nor has it been shown to us, that it has otherwise been provided by the Congress and the People of Puerto Rico, through a compact or otherwise, nor that it is locally inapplicable.

The law as stated guides us in looking at the second point of argument. We do not assume that "Puerto Rico is now the equal of a State". We do not have to. Whatever the equality or the inequality of the Commonwealth to a State, the Federal Relations Act, 64 Stat. 319, at sec. 4, specifies that, in considering a statute such as the one here interposed, it "shall have the same force and effect in Puerto Rico as in the United States."

Plaintiff's argument on this point is quite short and we transcribe it here almost in its entirety.

* * * the Court can take judicial cognizance of the fact that the construction industry depends in great measure upon interstate commerce. It can also take judicial notice of the fact that sand, gravel and stone are the very nerve centers of such industry. Indeed, it can be argued that without sand, gravel and stone there can be no construction industry and that as a consequence thereof many other industries, interstate in nature, would be adversely affected. Certainly more interstate commerce is affected in our situation that in the case of United States v. Yellow Cab Co., 332 U.S. 218 [67 S.Ct. 1560, 91 L.Ed. 2010], wherein the Supreme Court stated "(s)ection 1 of the (Sherman) Anti-Trust Act outlaws unreasonable restraints on interstate commerce regardless of the amount of commerce affected. Cfr. Mercer v. United States, (C.C.A., N.J., 1931), 61 F.2d [97] 92; Page v. Work, (C.A. Cal., 1961), 290 F.2d 323.

The Commerce Clause granted to Congress a power which, without doubt, is one of the greatest possessed by that legislative body, as well as one of the most far reaching. Striking examples of this have recently been made clear in issues regarding civil rights. Cfr. Heart of Atlanta Motel Inc. v. United States, (1964),

379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258.

■ Nevertheless, the Constitution did not wipe out the federal system in this matter, and we must still reckon with a distinction between what jurisdiction lies in the State and what lies in the Federal Government, on these matters. The case history of this distinction is very long and runs from Chief Justice John Marshall's opinion in Gibbons v. Ogden, (1824), 9 Wheat. 1, 22 U.S. 1, 6 L.Ed. 23, to the present.

■ First we will consider the distinctions between intrastate and interstate commerce; then we will pass on to the question of the difference between "engaged in commerce" and "affecting commerce"; finally these concepts will be applied to the problem herein raised. Grammatically speaking, "interstate" signifies "between States", and "intrastate" means "within a State". Confessedly, the jurisdiction over commerce in the first instance lies in Congress and, over the second, in the States themselves. Of course, commerce which itself could be considered within a State may be regulated by Congress under the Commerce Clause if it "affects" interstate commerce.

■ This is closesly related to the distinction between that which is directly engaged in interstate commerce and that which affects interstate commerce. Furthermore, in so far as anti-trust laws are concerned, jurisdiction is tested by the effect on interstate commerce and not necessarily by the effect on a particular business engaged in interstate commerce. Page v. Work, (9th Cir., 1961), 290 F.2d 323, cert. den. 368 U.S. 875, 82 S.Ct. 121, 7 L.Ed.2d 76.

■ Interstate commerce is not restricted to particularized items. The Constitution, as a living document, can be and is applied to the changing conditions of the nation it quickens. So it is with the Commerce Clause. It is intended to govern business in all circumstances within its own proper limitations. Pensacola Telegraph Co. v. Western Union Telegraph Co., (1878), 96 U.S. 1, 24 L.Ed. 708.

The exact line of demarcation between that which is interstate and that which is intrastate, between what is within the Federal jurisdiction and that which is within the State jurisdiction, has not yet been achieved and probably never shall be reached. United States v. South Eastern Underwriters Association, (1944), 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440; Prudential Insurance Co. v. Benjamin, (1946), 328 U.S. 408, 66 S.Ct. 1142, 90 L.Ed. 1342.

■ A business activity which appears to be entirely intrastate may be so closely related to interstate commerce as to require its being regulated by Congress. Pevely Dairy Co. v. United States, (8th Cir., 1949), 178 F.2d 363, cert. den. 339 U.S. 942, 70 S.Ct. 794, 94 L.Ed. 1358. Of course, Congress has to express its intention to regulate that business activity in order for us to find that there is federal jurisdiction in a specific case.

■ Where the application of federal controls is sought over activities which, considered in themselves, are understood to be entirely intrastate, it must appear that there is a close and substantial relation to interstate commerce in order to justify the federal intervention. Santa Cruz Fruit Packing Co. v. National Labor Relations Board, (1938), 303 U.S. 453, 58 S.Ct. 656, 82 L.Ed. 954.

■ Congress can legislate controllingly over such local and intrastate activities as are closely and substantially related to interstate traffic, so that control is essential or appropriate to the security of that traffic, to the efficiency of the interstate service, and to the maintenance of conditions under which interstate commerce may be conducted upon fair terms and without bother or hindrance. Bethlehem Steel Co. v. New York Labor Relations Board, (1947), 330 U.S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234; Houston E. & W. T. R. Co. v. United States, (1914), 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341; State Board of Insurance

844

v. Todd Shipyards, Inc., (1962), 370 U.S. 451, 8 L.Ed.2d 620, 82 S.Ct. 1380.

When legislating in this manner, Congress has on occasion left it to the Courts to determine whether the interstate activities have the prohibited effect on commerce. Thus it is with the Sherman Act here in question. United States v. F. W. Darby Lumber Co., (1941), 312 U.S. 100, 85 L.Ed. 609, 614, 61 S.Ct. 451.

In enacting the Sherman Act and the Clayton Act, Congress exercised its full power over interstate commerce, so that they extend not only to transactions which are directly in the stream of interstate commerce, but also to intrastate transactions which substantially affect interstate commerce. Las Vegas Merchant Plumbers Association v. United States, (9th Cir., 1954), 210 F.2d 732, cert. den. 348 U.S. 817, 75 S.Ct. 29, 99 L.Ed. 645.

Nevertheless, the test of Federal Power over an activity which may appear to be totally intrastate is not that the acts complained of affect a business engaged in interstate commerce, *but that they affect the interstate commerce of such business, and that this effect is substantial in nature.* Lieberthal v. North Country Lanes Inc., (2d Cir., 1964), 332 F.2d 269; Atlantic Co. v. Citizens Ice & Cold Storage Co., (5th Cir., 1949), 178 F.2d 453, cert. den. 339 U.S. 953, 70 S.Ct. 841, 94 L.Ed. 1365.

In the instant case, plaintiff has failed to show how Union's work stoppage against him substantially affects interstate commerce. He has not alleged that he is the sole or most substantial supplier of the commodity involved. He has not alleged that Union has acted against all suppliers generally. No showing has been made as to whether or not the construction industry has been brought to a standstill. In short, plaintiff has failed to convince this Court that circumstances are such that jurisdiction in this matter lies with it.

In view of the foregoing, the case shall be dismissed for lack of jurisdiction.