Lee Sayles **TRUXES** and Sayles Electric Corporation, Plaintiffs,

v.

**ROLAN ELECTRIC CORPORATION,** Gordon S. Ensign, Donald G. Ensign, Holyoke Wire and Cable Corporation and Excel Electric Corporation, Defendants.

**Civ. No. 663–67.**

United States District Court, D. Puerto Rico.

July 16, 1970.

Gilberto Mayo, Santurce, P. R., for plaintiffs.

Rodríguez Ema & Rodríguez Ramon, San Juan, P. R., for Rolan Electric Corp., Gordon S. Ensign and Excel Electric Corp.

McConnell, Valdes Kelley & Sifre, San Juan, P. R., for Holyoke Wire and Cable Corp.

## ORDER

FERNANDEZ-BADILLO, District Judge.

The plaintiffs brought an action against the defendants for alleged combination in restraint of trade and have invoked the jurisdiction of this court and sought for a remedy pursuant to Sections 1, 2 and 15 of Title 15 U.S.C.A. The jurisdiction of the Court has also been invoked and reference has been made to Section 1337 of Title 28 of U.S. C.A.

Defendant Holyoke Wire and Cable Corporation on June 21, 1968 filed a motion to quash service of summons on the grounds that Holyoke is not subject to service of process in Puerto Rico; and, on June 28, 1968 co-defendant Excel Electric Corporation filed a motion for dismissal on the grounds of lack of subject matter jurisdiction and lack of substantial federal question.

On September 16, 1968 Rolan Electric Corporation and Gordon S. Ensign also filed a motion to dismiss on the grounds

of lack of subject matter jurisdiction; and, alternatively dismissal of the action because of improper venue or that the action be transferred to the Northern District of Illinois.

Plaintiffs filed a motion in opposition to the request of defendants to quash service, to dismissal of the action, and the transfer of the case to other jurisdiction.

On August 30, 1968 the plaintiffs filed a motion requesting from this court an order to compel Gordon S. Ensign to appear for the continuance of his deposition. An opposition to such petition was filed on September 27, 1968.

After hearings and filing of memoranda by the parties in support of their respective positions, the Court, having given due consideration to the points in controversy, is of the opinion that the motions to dismiss filed by the defendants should be denied for the argument hereinafter expressed.

It is alleged in the complaint that the defendants conspired and combined themselves to deprive the plaintiffs of the necessary raw material to pursue its business in violation of the Anti-Trust Laws of the United States. It is inferred from the pleadings that Rolan Electric and Holyoke Wire and Cable Corporation are foreign corporations with principal offices and domicile outside of the Commonwealth of Puerto Rico. It is also inferred from the said pleadings that Gordon S. Ensign, President of Rolan Electric Corporation and Donald G. Ensign, President of Excel Electric Corporation, are domiciled and residents outside of the Commonwealth of Puerto Rico.

The illegal acts alleged to be committed by the defendants occurred outside and within the Commonwealth of Puerto Rico. It is also inferred from the pleadings that plaintiffs impute to the defendants to have entered into a contract, conspiracy or combination to discriminate against plaintiffs and in favor of competitor Excel Electric Corporation, in the supply of necessary raw material

for the plaintiff to continue their manufacturing operation in the Commonwealth of Puerto Rico. The answers of Holyoke to interrogatories submitted by plaintiffs clearly show that Holyoke was a corporation engaged in Interstate Commerce as "in commerce" has been defined by the Antitrust Laws and as interpreted by the cases. In the same manner, Rolan Electric Corporation as an intermediate agent of plaintiffs and Holyoke Wire and Cable Corporation entered into agreement with the latter for the supply of raw material to plaintiffs and to Excel Electric Corporation. The documents on file have established that the product supplied by Holyoke Wire and Cable Corporation was at the time charged in the complaint very scarce and that the supply of the said product, balum wire, was not easily available to the plaintiff from other sources. The plaintiffs complain that the said balum wire at times was diverted from plaintiffs to its competitor Excel Electric Corporation.

It is a well known legal principle that the pleadings in a motion to dismiss have to be taken as true; but, the defendants' motion to dismiss involves matters relative to the applicability of federal statutes in Puerto Rico after the establishment of the Commonwealth in 1952, and that is what really is of serious concern to this court at this moment.

The applicability of Section 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1, 2 has been the subject of controversy in this Court at different times, prior to Commonwealth status, Peck Steamship Line v. N. Y. and P.R.R.S.S. Co., 2 P.R. Fed.Rep. 109 (1906), Pastor v. N. Y. and P. R. Steamship Co. et als., 3 P.R. Fed.Rep. 95 (1907); and, after the Commonwealth Status, in many other cases, but particularly David Cabrera, Inc. v. Union de Choferes y Duenos, 256 F.Supp. 839 (D.C.P.R., 1966); Cooperativa de Seguros Multiples de Puerto Rico v. San Juan, 289 F.Supp. 983 (D.C.P.R., 1968). The defendants Rolan Electric Corporation, Gordan S. Ensign, Donald G. Ensign and Excel Electric Corpora-

tion argue that sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1 and 2, are not applicable to Puerto Rico after Commonwealth Status. These defendants claim that since Puerto Rico is neither a state, a territory or possession of the United States such sections of the law are not any longer enforceable in Puerto Rico. This court in the case of *Liquilux Gas Services of Ponce, Inc. v. Tropical Gas Company, Inc. et al.*, 303 F.Supp. 414 (1969) discussed at length the applicability of a federal statute in the commonwealth of Puerto Rico and at p. 420 of the opinion it is stated:

"It is most significant to note that in 25 cases (the cases are cited at the bottom of page 420 Note 3) decided in a variety of forums since 1952 involving the applicability of pre-Commonwealth federal statutes to events in or citizens of Puerto Rico, pre-Commonwealth laws have been applied in precisely the same manner as they would have applied if the events had occurred in a state or the individuals had been citizens of a state. In those decisions in which Puerto Rico is still being referred to as a 'territory', the result of that conclusion has been that the federal statute involved was given the same effect with respect to Puerto Rico as in a state. Indeed, in every such case the result of a contrary conclusion would have been that Puerto Rican citizens would have received less protection under the federal law than citizens of a state."

■ It may be argued that there is no showing in the pleadings that plaintiffs were engaged in interstate commerce or that the case did not affect interstate commerce. Such interpretations of the averments would be frivolous and intended only to defeat the "Rule of Reason" which should be applied to this type of cases. *Standard Oil Co. of New Jersey v. United States*, 221 U.S. 1, 59, 31 S.Ct. 502, 55 L.Ed. 619 (1911). The evidence before the court is enough to convince the Judge that the activities of plaintiff were as "in commerce" as defined by the Anti-Trust Laws. There is

no question in the mind of this court that the case involves a substantial federal question which deserves the entertainment by this court. Prima facie there is a showing that a group of businessmen may have acted in concert to deprive plaintiffs of the necessary raw materials to manufacture and compete effectively. Such a combination is precisely what Section 1 of the Sherman Act forbids. Rolan Electric Corporation and Holyoke Wire and Cable Corporation entered into a contract for the shipping of balum wire to the plaintiffs. Thereafter, Holyoke Wire and Cable Corporation refused to ship wire to the plaintiffs upon request of Rolan Electric Corporation and on the alleged subterfuge of not being able to accept orders from new clients. Moreover, by Holyoke's own admission shipments of balum wire were made to plaintiffs' competitor, Excel Electric Corporation, during the year 1966, and said shipments, in one way or another, were guaranteed by co-defendant Rolan Electric Corporation. In the case of *Peck Steamship Line v. N. Y. and P.R.S.S. Co.*, *supra*, this Court said:

"The contract is only part of the conspiracy. The monopoly is only the result of it. The conspiracy is the basis of the action, and the injuries and violations of law the gist of the plaintiffs' rights."

■ The object of the Sherman Act is the prohibition of all contracts or acts which it was considered had a monopolistic tendency; especially those which were brought to unduly diminish competition, and all acts producing or tending to produce consequences of monopoly. The Sherman Act, in accordance with the "Rule of Reason" should be interpreted in the light of a broad public policy favoring competition and condemning monopoly. *Standard Oil Co. of New Jersey v. United States*, *supra*, pp. 59–62, 31 S.Ct. 502.

■■ The doctrine of "Incipient Restraints" as interpreted by the United States Supreme Court means to proscribe agreements or conduct which has

a reasonable probability of substantial lessening of competition or a tendency to create a monopoly which affect relevant line of commerce. Mandeville Island Farms Inc. v. American Crystal Sugar Co., 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328 (1948). Even when the illegal acts are of a local nature but affect the stream of interstate commerce there might be found a violation of the anti-trust laws. United States v. Yellow Cab Co., 332 U.S. 218, 67 S.Ct. 1560, 91 L. Ed. 2010 (1947); United States v. Womens' Sports Wear Ass'n, 336 U.S. 460, 69 S.Ct. 714, 93 L.Ed. 805 (1949).

"The source of restraint may be intrastate, as the making of a contract or combination usually is; the application of the restraint may be intrastate, as it often is; but neither matters if the necessary effect is to stifle or restrain commerce among the states. If it is interstate commerce that feels the pinch, it does not matter how local the operation which applies the squeeze." United States v. Women's Sports Wear Ass'n, *supra.*

In Klor's Inc. v. Broadway-Hale Stores Inc., 359 U.S. 207, 211, 79 S.Ct. 705, 708, 3 L.Ed.2d 741 (1959) the Supreme Court of the United States expressed the following:

"In the landmark case of Standard Oil Co. of New Jersey v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L. Ed. 619, this Court read § 1 to prohibit those classes of contracts or acts which the common law had deemed to be undue restraints of trade and those which new times and economic conditions would make unreasonable. * * * The Court construed § 2 as making 'the prohibitions of the act all the more complete and perfect by embracing all attempts to reach the end prohibited by the first section, that is, restraints of trade, by any attempt to monopolize, or monopolization thereof * * *.' * * * The effect of both sections, the Court said, was to adopt the common-law proscription of all 'contracts or acts which it was considered had a monopolistic tendency * * *' and which interfered with the 'natural flow' of an appreciable amount of interstate commerce."

■ Group boycotts or concerted refusals by traders to deal with other traders are forbidden under the Sherman Act and they cannot be saved by allegations that they are reasonable in the specific conditions. Klor's Inc. v. Broadway-Hale Stores, Inc., *supra.*

■ It is the Court's view, taking as true the well pleaded facts, that the issue is whether or not the defendants engaged in practices contrary to the Anti-Trust Laws, and, particularly, Section 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1 and 2. The fact that plaintiffs' business was so small that its destruction made little difference to the economy has no bearing to sustain that a substantial federal question has been brought before this Court. Klor's Inc. v. Broadway-Hale Stores, *supra.* If plaintiffs' pleadings prima facie show that injury has been inflicted by alleged illegal acts forbidden by Anti-Trust Laws and plaintiffs' business flows in the interstate commerce then plaintiffs are entitled to have their day in Court, independently, whether or not the complaint discloses a public wrong:

"Congress has, by legislative fiat, determined that such prohibited activities are injurious to the public and has provided sanctions allowing private enforcement of the anti-trust laws by an aggrieved party. *These laws protect the victims of the forbidden practices as well as the public. (italics ours).* Simpson v. Union Oil Company of California, 377 U.S. 13, 16, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964), *citing* Radovich v. National Football League, 352 U.S. 445, 453–454, 77 S.Ct. 390, 1 L.Ed.2d 456.

"Therefore, to state a claim upon which relief can be granted under that section, (Section 1 of the Sherman Act) allegations adequate to show a violation and, in a private treble damage action, that plaintiff was damaged thereby are all the law requires." Ra-

diant Burners Inc. v. People Co., 364 U.S. 656, 660, 81 S.Ct. 365, 367, 5 L. Ed.2d 358 (1961).

■ The Court disagrees with the statements of defendants Rolan Electric Corporation, Gordon S. Ensign, Excel Electric and Donald J. Ensign, "that any alleged restraint of trade between any state or states of the union and Puerto Rico is not actionable under Section 1 and 2 of the Sherman Act." The history of the relations between Puerto Rico and the United States clearly has made extensive to Puerto Rico those laws not locally inapplicable. Section 14 of the Foraker Act, of 1900, 31 Stat. 80. * * * The same disposition was inserted in Section 9 of the Jones Act of 1917, 39 Stat. 954; and, in Section 9 of the Federal Relations Act, 64 Stat. 319. This Court consistent with the rule of applicability of Federal Statutes not locally inapplicable has ruled that Anti-Trust Laws have the same force and effect in Puerto Rico as in any state of the Union. David Cabrera v. Union de Choferes y Duenos, *supra*; Cooperativa de Seguros Multiples v. San Juan, *supra*.

Defendant Holyoke implies that no participation or combination with the other co-defendants was intended to deprive plaintiffs of the necessary raw materials to compete in the interstate commerce. Nevertheless, by its own admission in the sworn statement of its president it admitted that the product which plaintiff was deprived of was in scarcity at the time of the alleged illegal acts complained of. It might be that Holyoke Wire and Cable Corporation's actions were not directly intended to interfere with plaintiffs' business but it let itself to be induced and agreed to cut-off supply to plaintiff of balum wire with full knowledge that such a restriction in the shipment of raw material to the plaintiff would result in restraint of trade and therefore affect in one way or another interstate commerce.

Without passing judgment on the merits of plaintiffs' claims, since the pleadings of a complaint are taken as true when dealing with a motion to dismiss, this Court is compelled to entertain the issues not only for the protection of plaintiff but for the protection of the public. United States v. General Motors, 384 U.S. 127, 86 S.Ct. 1321, 16 L.Ed.2d 415 (1966).

As previously stated, the applicablility of a federal statute in the Commonwealth of Puerto Rico after the establishment of the Commonwealth has been subject to consideration by this court. In the case of Mora v. Mejias, 115 F. Supp. 610 (D.C. 1953) it was held that the Commonwealth of Puerto Rico is a "State" within a statute requiring proceedings for injunction against enforcement of a state statute or order made by an administrative board acting on ground of unconstitutionality of the statute; and, thereafter a whole series of cases have considered Puerto Rico as a "State" for the applicability of federal statutes. For that reason Judge Snyder in Cosentino v. International Longshoremen's Ass'n, 126 F.Supp. 420, 422 (D.C. 1954), stated:

"* * * I am satisfied that the whole body of Federal laws that apply in the same constitutional way as they do to a State, continue to apply to Puerto Rico wherever they have been previously applicable. Congress could not have meant any other conclusion, nor could Puerto Rico have consented to any other arrangement. Chaos would have immediately resulted if the contrary conclusion were reached."

It is not necessary in this case "to delve into the question of the political status of Puerto Rico as a Commonwealth" David Cabrera Inc. v. Union de Choferes y Duenos, *supra*. All that is called for here is the application of Section 9 of the Puerto Rican Federal Relations Act. "Whatever the equality or inequality of the Commonwealth to a State, the Federal Relations Act, 64 Stat. 319, at Sec. 4, specifies that, in considering a statute such as the one here interposed, it, shall have the same force and effect in Puerto Rico as in the United States." David Cabrera Inc. v. Union de Choferes y Duenos, 256 F.

Supp. p. 842, *supra.* The argument of defendants Rolan Electric Corp., Excel Electric Corporation, Gordon S. Ensign and Donald G. Ensign to the effect that after Commonwealth Sections 1 and 2 of the Sherman Act are not applicable to Puerto Rico has no legal support in any case.

Therefore, it is the opinion of the Court that the defendants' motions to dismiss should be denied and the same are hereby denied.

### CHANGE OF VENUE

Defendants Rolan Electric Corporation and Gordon S. Ensign have suggested that the action be dismissed because of improper venue or that the action be transferred to the Northern District of Illinois.

*Title 15 U.S.C.A. § 22 states as follows:*

*"District in which to sue corporation:*

Any suit, action or proceeding under the antitrust laws against corporation may be brought not only in the judicial district where it is an inhabitant but also in any district wherein it may be found or transacts business, and all process in such cases may be served in the district of which it is an inhabitant or wherever it may be found."

It has been held that Section 22 of Title 15 U.S.C.A. is remedial and must be liberally construed. Bruner v. Republic Acceptance Corporation, 191 F.Supp. 200 (E.D.Ark., 1961). The purpose of this section was to establish venue under antitrust laws not only where a corporation resides or is found but also where it "transacts business." Donlan v. Carvel, 193 F.Supp. 246 (D.Md., 1961). The purpose of expansion of venue in antitrust actions, to include district in which a defendant corporation transacts business, was to give plaintiff the right to bring suit and have it tried in the district where defendants have committed violations of the Act and inflicted the forbidden injuries. Goldlawr, Incorporated v. Shubert,

169 F.Supp. 677 (E.D.Pa., 1958); Banana Distributors, Inc. v. United Fruit Company, 158 F.Supp. 153 (S.D.N.Y., 1957).

The plaintiffs in this action claim that both Gordon S. Ensign and Rolan Electric Corporation transacted business in the Commonwealth of Puerto Rico. Both defendants are linked by an alleged oral agreement between Lee Sayles Truxes and/or Sayles Electric Corporation, Gordon S. Ensign, Donald G. Ensign and Rolan Electric Corporation by virtue of which plaintiffs allegedly bought machinery belonging to Port Electric Corporation with the condition of receiving some kind of assistance and help in the supply of raw material by the aforementioned defendants. Any ruling of this Court in relation to change of venue must be based on the fairness and convenience of the parties and the witnesses, and the evidence to be introduced at the trial. It is a well known principle that venue is a doctrine of convenience and not jurisdictional. Vance Trucking Co., Inc. v. Canal Ins. Co., 338 F.2d 943 (4 Cir. 1964); Rutland Ry. Corp. v. Brotherhood of Locomotive Engineers et al., 307 F.2d 21 (2 Cir. 1962), certiorari denied, 372 U.S. 954, 83 S.Ct. 949, 9 L.Ed.2d 978 (1963). Plaintiffs have asserted that the proper forum to litigate this action has to be Puerto Rico taking into consideration that the plaintiffs, co-defendant Excel Electric Corporation, and most of the witnesses are all residents of Puerto Rico. It has been held that "since the difficulties, including both inconvenience and expenses appear relatively equal," the Court would deny the motion of foreign corporation defendants to transfer an anti-trust action to the district in which their principal places of business were located and leave the plaintiff's choice of forum undisturbed. Crawford Transport Co. v. Chrysler Corp., 191 F. Supp. 223, p. 228 (E.D. Ky., 1961). It seems to the Court that upon the doctrine of fairness and convenience transferring the case to another jurisdiction may result in economic hardship to the

plaintiffs in view of plaintiff's allegations that all witnesses it intends to use at the trial are residents and domiciled in the Commonwealth of Puerto Rico. The defendants have failed to show to this court an appraisable hardship. The burden is on the moving party and the statute requires a showing of "more than a limited degree of added convenience for trying the case in a different jurisdiction." Crawford Transport Co. v. Chrysler Corp., *supra*.

Therefore, the petition of defendant Gordon S. Ensign and Rolan Electric Corporation to dismiss because of improper venue and the petition to transfer the case to the Northern District of Illinois is hereby denied.

### Continuance of Deposition of Gordon S. Ensign

Gordon S. Ensign appeared at the offices of plaintiff's attorneys on July 23, 1968 at 10:00 a. m. for the taking of his deposition as an individual and officer of co-defendant Rolan Electric Corporation. About lunch time and by agreement of the parties the said deposition was tentatively continued for August 22 or 26, the day more favorable to Mr. Ensign's attorney. On August 20, 1968 the legal representation of Mr. Ensign informed plaintiff's attorneys that Mr. Gordon S. Ensign refused to appear for the continuance of his deposition. Plaintiff filed a motion on August 29, 1968 asking the Court for an order to compel Gordon S. Ensign to appear for the continuance of his deposition; and, on September 20, 1968 Mr. Ensign's attorney filed a motion in opposition.

Rule 30(b) of the Federal Rules of Civil Procedure makes it a duty of the party opposing the taking of his deposition to file a timely motion and show good cause for his non appearance. Gordon S. Ensign's motion was made after his deposition had already been commenced. No good cause has been shown by defendant Gordon S. Ensign to obtain the protection of this Court. The

fact that the deponent has no access to the books of Rolan Electric Corporation is no good cause for objecting the continuance of his deposition. Moore's Fed. Prac. Vol. IV, Sec. 26.10 p. 1133 exposes the rule in relation to request for protection of a party under Rule 30(b) on the ground that the deponent has no access to the documents requested to bring with him:

"In summary: a party, desiring to take the deposition of another party, may designate in the notice of deposition the papers, documents, and the like to be produced at the examination of the party. This, however, is essentially only an invitation so far as the production of the papers, documents and the like are concerned. And if the party from whom the papers, documents, and the like are sought refuses to comply with the notice to produce, his adversary can compel production only by complying with Rule 34."

The Court Orders that Gordon S. Ensign appear for the continuance of his deposition upon notice to be served by the plaintiff. The Motion to Compel defendant Gordon S. Ensign to Appear for the Taking of His Deposition filed by plaintiffs on August 30, 1968 is hereby granted.

With reference to the Second Cause of Action of the complaint the Court grants plaintiff twenty (20) days to amend and thereby make the proper allegation relative to interstate commerce activities of plaintiffs pursuant to the anti-trust statutes allegedly violated.

The Court also rules that service of process to Holyoke Wire and Cable Corp. pursuant to Rule 4.7 of the Rules of Civil Procedure for Puerto Rico (1958) was proper upon showing that Holyoke Wire and Cable Corporation has had the minimum contacts with the Commonwealth of Puerto Rico.

It is further ordered that once plaintiffs have made the proper allegation relative to commerce between plaintiffs and defendants, the latter shall proceed to

file their answers to the complaint within thirty (30) days from the date of such filing by the plaintiff.

Accordingly, it is now ordered that the Motions to Dismiss filed separately by defendants Holyoke Wire and Cable Corporation on January 21, 1968, by Excel Electric Corporation on June 28, 1968, by Rolan Electric Corporation and Gordon S. Ensign on September 16, 1968 must be and are hereby denied.

It is so ordered.