# STATE BOARD OF INSURANCE ET AL. *v.* TODD SHIPYARDS CORP.

No. 144. Argued March 21, 1962.—
Decided June 25, 1962.

*Bob E. Shannon* and *Fred B. Werkenthin,* Assistant Attorneys General of Texas, argued the cause for petitioners. With them on the briefs were *Will Wilson,* Attorney General, *C. K. Richards* and *Coleman Gay III,* Assistant Attorneys General.

*Charles R. Vickery, Jr.* argued the cause for respondent. With him on the briefs was *Frank A. Liddell.*

*Cloyd Laporte* and *John Mason Harding* filed a brief for the Church Fire Insurance Corp. et al., as *amici curiae,* urging affirmance.

*Jack P. F. Gremillion,* Attorney General of Louisiana, filed a brief for the State of Louisiana, as *amicus curiae,* urging reversal.

Mr. Justice Douglas delivered the opinion of the Court.

When we held in *United States* v. *South-Eastern Underwriters Assn.,* 322 U. S. 533, that the modern business of insurance was "interstate commerce," we put it in a category which Congress could regulate and which, if our prior decisions controlled, could not in some respects be regulated by the States, even in absence of federal regulation. See Frankfurter, The Commerce Clause (1937); Rutledge, A Declaration of Legal Faith (1947).

Congress promptly passed the McCarran-Ferguson Act, 59 Stat. 33, 15 U. S. C. § 1011, which provided that the regulation and taxation of insurance should be left to the States, without restriction by reason of the Commerce Clause.[1]  Subsequently, by force of the McCarran-Ferguson Act, we upheld the continued taxation and regulation by the States of interstate insurance transactions. *Prudential Ins. Co.* v. *Benjamin,* 328 U. S. 408.

Prior to the *South-Eastern Underwriters* decision, we had given broad scope to local regulation of the insurance business. *Osborn* v. *Ozlin,* 310 U. S. 53; *Hoopeston Canning Co.* v. *Cullen,* 318 U. S. 313. The *Osborn* case upheld a Virginia requirement that insurance companies authorized to do business in that State must write policies through resident agents. The *Hoopeston* case, while it involved the making of out-of-state insurance

---

[1] 15 U. S. C. § 1011 provides:

"Congress declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States."

15 U. S. C. § 1012 provides, so far as relevant here:

"(a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business."

contracts, also involved servicing of policies in New York, the regulating State.

Here, unlike the *Osborn* and *Hoopeston* cases, the insurance companies carry on no activities within the State of Texas. Of course, the insured does business in Texas and the property insured is located there. It is earnestly argued that, unless the philosophy of the *Osborn* and *Hoopeston* decisions is to be restricted, the present Texas tax [2] on premiums paid out-of-state on out-of-state contracts should be sustained. We are urged to follow the approach of the *Osborn* and *Hoopeston* decisions, look to the aspects of the insurance transactions taken as a whole, and decide that there are sufficient contacts with Texas to justify this tax under the requirements of due process.

Were the *Osborn* and *Hoopeston* cases and the bare bones of the McCarran-Ferguson Act our only criteria for decision, we would have presented the question whether three prior decisions—*Allgeyer* v. *Louisiana,* 165 U. S. 578; *St. Louis Cotton Compress Co.* v. *Arkansas,* 260 U. S. 346; *Connecticut General Life Ins. Co.* v. *Johnson,* 303 U. S. 77—have continuing vitality. The first two were distinguished in the *Osborn* (310 U. S., at 66–67) and *Hoopeston* (318 U. S., at 318–319) cases. The *Allgeyer* case held that Louisiana by reason of the Due Process Clause of the Fourteenth Amendment could not make it a misdemeanor

---

[2] 14 Vernon's Tex. Civ. Stat., 1952 (Cum. Supp. 1961), Art. 21.38, § 2 (e) provides:

"If any person, firm, association or corporation shall purchase from an insurer not licensed in the State of Texas a policy of insurance covering risks within this State in a manner other than through an insurance agent licensed as such under the laws of the State of Texas, such person, firm, association or corporation shall pay to the Board a tax of five per cent (5%) of the amount of the gross premiums paid by such insured for such insurance. Such tax shall be paid not later than thirty (30) days from the date on which such premium is paid to the unlicensed insurer."

to effect insurance on Louisiana risks with an insurance company not licensed to do business in Louisiana, where the insured through use of the mails contracted in New York for the policy. The *St. Louis Cotton Compress* case held invalid under the Due Process Clause an Arkansas tax on the premiums paid for a policy on Arkansas risks, made with an out-of-state company having no office or agents in Arkansas. The *Connecticut General Life Insurance* case held invalid under the Due Process Clause a California tax on premiums paid in Connecticut by one insurance company to another for reinsurance of life insurance policies written in California on California residents, even though both insurance companies were authorized to do business in California. The Court stated:

> "All that appellant did in effecting the reinsurance was done without the state and for its transaction no privilege or license by California was needful. The tax cannot be sustained either as laid on property, business done, or transactions carried on within the state, or as a tax on a privilege granted by the state." 303 U. S., at 82.

The Texas Court of Civil Appeals, 340 S. W. 2d 339, and the Texas Supreme Court, feeling bound by these decisions, held the tax on premiums unconstitutional, 162 Tex. 8, 343 S. W. 2d 241. We granted certiorari, 368 U. S. 810.

The insurance transactions involved in the present litigation take place entirely outside Texas. The insurance, which is principally insurance against loss or liability arising from damage to property, is negotiated and paid for outside Texas. The policies are issued outside Texas. All losses arising under the policies are adjusted and paid outside Texas. The insurers are not licensed to do busi-

ness in Texas, have no office or place of business in Texas, do not solicit business in Texas, have no agents in Texas, and do not investigate risks or claims in Texas.

The insured is not a domiciliary of Texas but a New York corporation doing business in Texas. Losses under the policies are payable not to Texas residents but to the insured at its principal office in New York City. The only connection between Texas and the insurance transactions is the fact that the property covered by the insurance is physically located in Texas.

We need not decide *de novo* whether the results (and the reasons given) in the *Allgeyer, St. Louis Cotton Compress,* and *Connecticut General Life Insurance* decisions are sound and acceptable. For we have in the history of the McCarran-Ferguson Act an explicit, unequivocal statement that the Act was so designed as not to displace those three decisions. The House Report stated:

"It is not the intention of Congress in the enactment of this legislation to clothe the States with any power to regulate or tax the business of insurance beyond that which they had been held to possess prior to the decision of the United States Supreme Court in the *Southeastern Underwriters Association case.* Briefly, your committee is of the opinion that we should provide for the continued regulation and taxation of insurance by the States, subject always, however, to the limitations set out in the controlling decisions of the United States Supreme Court, as, for instance, in *Allgeyer* v. *Louisiana* (165 U. S. 578), *St. Louis Cotton Compress Co.* v. *Arkansas* (260 U. S. 346), and *Connecticut General Insurance Co.* v. *Johnson* (303 U. S. 77), which hold, inter alia, that a State does not have power to tax contracts of insurance or reinsurance entered into outside its jurisdiction by individuals or corporations resident or

456

domiciled therein covering risks within the State or to regulate such transactions in any way." H. R. Rep. No. 143, 79th Cong., 1st Sess., p. 3.

Senator McCarran, after reading the foregoing part of the House Report during the Senate debate, stated, ". . . we give to the States no more powers than those they previously had, and we take none from them." 91 Cong. Rec. 1442.

So, while Congress provided in 15 U. S. C. § 1012 (a) that the insurance business "shall be subject to the laws of the several States which relate to the regulation or taxation of such business,"[3] it indicated without ambiguity that such state "regulation or taxation" should be kept within the limits set by the *Allgeyer, St. Louis Cotton Compress,* and *Connecticut General Life Insurance* decisions.

The power of Congress to grant protection to interstate commerce against state regulation or taxation (*Bethlehem Steel Co.* v. *State Board,* 330 U. S. 767, 775–776; *Rice* v. *Santa Fe Elevator Corp.,* 331 U. S. 218, 235–236) or to withhold it (*In re Rahrer,* 140 U. S. 545, 560 *et seq.; Prudential Ins. Co.* v. *Benjamin, supra*) is so complete[4] that its ideas of policy should prevail.

---

[3] *Supra,* note 1.

[4] As we stated in *Prudential Ins. Co.* v. *Benjamin, supra,* at 434: "The power of Congress over commerce exercised entirely without reference to coordinated action of the states is not restricted, except as the Constitution expressly provides, by any limitation which forbids it to discriminate against interstate commerce and in favor of local trade. Its plenary scope enables Congress not only to promote but also to prohibit interstate commerce, as it has done frequently and for a great variety of reasons. That power does not run down a one-way street or one of narrowly fixed dimensions. Congress may keep the way open, confine it broadly or closely, or close it entirely, subject only to the restrictions placed upon its authority by other constitutional provisions and the requirement that it shall not invade the domains of action reserved exclusively for the states."

Congress, of course, does not have the final say as to what constitutes due process under the Fourteenth Amendment. And while Congress has authority by § 5 of that Amendment to enforce its provisions (*Ex parte Virginia,* 100 U. S. 339; *Monroe* v. *Pape,* 365 U. S. 167), the McCarran-Ferguson Act does not purport to do so. We have, of course, freedom to change our decisions on the constitutionality of laws. *Smith* v. *Allwright,* 321 U. S. 649, 665. But the policy announced by Congress in the McCarran-Ferguson Act was one on which the industry had reason to rely since 1897, when the *Allgeyer* decision was announced; and we are advised by an *amicus* brief how severe the impact would be on small insurance companies should the old rule be changed. When, therefore, Congress has posited a regime of state regulation on the continuing validity of specific prior decisions (see *Federal Trade Comm'n* v. *Travelers Health Assn.,* 362 U. S. 293, 301–302), we should be loath to change them.

We have accepted the *status quo* in comparable situations. After this Court held in *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, that a State could not provide compensation to stevedores doing maritime work, Congress enacted the Longshoremen's Act. See S. Rep. No. 973, 69th Cong., 1st Sess., p. 16; H. R. Rep. No. 1767, 69th Cong., 2d Sess., p. 20. In *Davis* v. *Department of Labor,* 317 U. S. 249, we took note of the passage of laws which "accepted the *Jensen* line of demarcation between state and federal jurisdiction" (*id.,* at 256), which line we also accepted in spite of the fact that the *Jensen* case had become in the eyes of some a derelict in the stream of the law.

In *Toolson* v. *New York Yankees, Inc.,* 346 U. S. 356, 357, we refused to re-examine a prior decision holding baseball not to be covered by the antitrust laws, stating that "[t]he business has thus been left for thirty years to develop, on the understanding that it was not sub-

458

ject to existing antitrust legislation." In that case Congress had remained silent, not changing the law. Here Congress tailored the new regulations for the insurance business with specific reference to our prior decisions. Since these earlier decisions are part of the arch on which the new structure rests, we refrain from disturbing them lest we change the design that Congress fashioned.

*Affirmed.*

MR. JUSTICE FRANKFURTER took no part in the decision of this case.

MR. JUSTICE WHITE took no part in the consideration or decision of this case.

MR. JUSTICE BLACK, dissenting.

In holding that the McCarran-Ferguson Act withdrew from the States the power to tax the ownership and use of insurance policies on property located within their borders merely because those policies were made by representatives of the insurer and the insured in another State, I think the Court places an unwarranted construction upon that Act which may seriously impair the capacity of Texas and other States to provide and enforce effective regulation of the insurance business. The Texas statute held invalid was enacted by the State Legislature in 1957 in order to protect the State's comprehensive supervision of insurance companies and their policies from being undercut by the practice of insuring Texas property with insurance companies not authorized to do business in that State. Prior to 1957, the whole cost of the Texas program had been placed upon those insurance companies which had subjected themselves to Texas regulation and taxation by qualifying to do business in the State. The 1957 statute was passed for the express purpose of equalizing that burden by placing a tax upon the purchasers of

unregulated insurance roughly equal to that imposed directly upon regulated companies. In this way the State tried to protect its qualified and regulated companies from unfair competition by companies which could sell insurance on Texas property cheaper because they did not have to pay their part of the cost of the Texas insurance regulation program. The Court's construction of the McCarran-Ferguson Act bars Texas from providing this sort of protection to regulated companies. This holding seems to me to threaten the whole foundation of the Texas regulatory program for it plainly encourages Texas residents to insure their property with unregulated companies and discourages out-of-state companies from qualifying to do business in and subjecting themselves to regulation and taxation by the State of Texas.

I cannot believe that an Act which was basically designed to leave the power to regulate and tax insurance companies to the States was intended to have any such effect. The McCarran-Ferguson Act "declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States"—a declaration which is not qualified by any other language of the Act. Nothing in the legislative history which the Court relies upon persuades me that we should read this Act in a way which so seriously impairs the power of the States to discharge their responsibilities under the Act to provide a comprehensive, effective, well-integrated program for regulating insurance on property within their borders. I think the McCarran-Ferguson Act left Texas with adequate power to place a tax on the ownership and use of insurance policies covering the vast properties owned and operated by this respondent in Texas, and I therefore dissent.