**HOYLAKE INVESTMENTS LIMITED, a Bermuda corporation, Plaintiff,**

**v.**

**Susan GALLINGER, Director, Arizona Department of Insurance; and Robert K. Corbin, Attorney General of the State of Arizona, Defendants,**

**and**

**Farmers Insurance Company of Arizona, Farmers Insurance Group Inc.; Farmers Insurance Exchange Truck Insurance Exchange; and Fire Insurance Exchange, Intervenor–Defendants.**

**No. CIV 89–1273–PHX–RGS.**

United States District Court, D. Arizona, Phoenix Division.

Sept. 27, 1989.

Robert L. Palmer, Phoenix, Ariz., for plaintiff.

Charles R. Cohen, Asst. Atty. Gen., Joseph E. Mais, Phoenix, Ariz., and Leonard Venger, Los Angeles, Cal., for defendants.

## ORDER

STRAND, District Judge.

### Background

On July 11, 1989, plaintiff Hoylake filed its complaint requesting this court (1) declare that the Arizona Insurance Holding Company Systems Act A.R.S. § 20–481 et seq., ("the Act") be held unconstitutional as applied on grounds that the Act has an impermissible extraterritorial reach and violates the commerce clause, the due process clause, the foreign affairs clause of the United States Constitution, and 42 U.S.C. § 1983 and, (2) issue preliminary and permanent injunctive relief against the enforcement of the Act. Hoylake argues that Arizona's invocation of the Act to reach across the Atlantic and subject it to the jurisdiction of a state administrative proceeding violates constitutional principles reaffirmed by the Supreme Court in *Healy v. Beer Institute, Inc.,* —— U.S. ——, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989).

Defendants[1] oppose Hoylake's action on grounds that A.R.S. § 20–481 et seq., was authorized by Congress under the McCarran–Ferguson Act, 15 U.S.C. § 1011 et seq., and that application of the Act to Hoylake is permissible because Hoylake is attempting to purchase a domestic insurer.

Having considered the issues raised by the parties in their memoranda and oral argument, and having considered the pertinent legal authority, the court now renders its decision.

### Facts

Plaintiff Hoylake Investments Limited ("Hoylake") is a Bermuda corporation. On

---

1. Defendant Farmers moved to intervene in this matter. The court granted defendant's motion in open court on August 21, 1989. In addition, the court granted the National Association of Insurance Commissioners permission to file an amicus curiae brief.

July 11, 1989, Hoylake and its parent Anglo Group FLC, an United Kingdom company, announced an offer to purchase the outstanding shares of B.A.T. Industries. Hoylake intends to offer various securities in exchange for B.A.T. shares at the current exchange rate. Hoylake estimates the value of B.A.T.'s shares will total approximately $21 billion. The offer was made in the United Kingdom ("U.K.") and is controlled by the English City Code, which governs takeovers in the U.K. Under the City Code, the offer must become unconditional by October 28, 1989. If Hoylake fails to comply with the requirements of the City Code, it is precluded from making another tender offer for a period of twelve months.[2]

B.A.T. is the parent company of BATUS a corporation doing business in the United States. BATUS acquired Farmers Group, Inc. in December, 1988. Farmers Group Inc. controls three insurance exchanges, which control Farmers Insurance of Arizona ("Farmers"). Farmers Insurance of Arizona is an Arizona domestic insurance company.

On July 11, 1989, counsel for Hoylake contacted Susan Gallinger, Director of Insurance in Arizona ("Director") indicating that Hoylake intended to file a Form A information statement with the Director pursuant to sections 20–481 to 20–481.23 of the Act.[3] As a result of Hoylake's Form A filing, the Director issued a notice of hearing, dated July 19, 1989, commencing an administrative proceeding under A.R.S. § 20–481 et seq., and scheduled a hearing for August 9, 1989 on Hoylake's petition to acquire control of Farmers. After various motions by the Hoylake, B.A.T. and Farmers, a hearing was held on August 16–17, 1989 on the question of whether Hoylake's acquisition of B.A.T. subjects Hoylake to the jurisdiction of the Department of Insurance under the Act. Post-hearing briefs were filed by the parties on August 28, 1989. The Director has not ruled on the matter.

Discussion

In its application for preliminary injunction, Hoylake argues that the Act, insofar as it gives the state insurance director the right to approve or disapprove a Bermuda corporation's offer made in England for the shares of a British company is a direct regulation of commerce outside of Arizona's borders, and therefore, prohibited under a recent line of cases decided by the United States Supreme Court. *Healy v. Beer Institute, Inc.,* —— U.S. ——, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989); *Brown–Forman Distillers Corp. v. New York State Liquor Authority,* 476 U.S. 573, 579, 106 S.Ct. 2080, 2084, 90 L.Ed.2d 552 (1986); *Edgar v. MITE Corp.,* 457 U.S. 624, 640, 102 S.Ct. 2629, 2639, 73 L.Ed.2d 269 (1982) (plurality opinion).

Hoylake also argues that the Act as applied is unconstitutional because it would block their tender offer for shares of B.A.T. Hoylake contends that enforcement of the Act would allow Arizona to regulate a transaction between two entities that have no connection with the state. Hoylake argues the due process clause prohibits such extensive reach of a state's power. *See State Board of Insurance v. Todd Shipyards Corp.,* 370 U.S. 451, 453–56, 82 S.Ct. 1380, 1382–84, 8 L.Ed.2d 620 (1962)

Finally, Hoylake argues that application of the statute violates notions of comity and usurps the exclusive foreign policy prerogatives of the federal government.

---

**2.** On September 15, 1989, the Takeover Panel in London announced that it would relax the rules for compliance with the City Code to allow Hoylake to comply with the regulatory proceedings in the various states. Further, it stated that if and when it became lawful as a matter of United States law for Hoylake to proceed, Hoylake could within 21 days announce a new offer. Although, this announcement appears to obviate the need for these proceedings, B.A.T. has announced that it intends to appeal the decision of the Takeover Panel. Thus, the motions before the court remain pertinent to the resolution of this matter.

**3.** A Form A statement requires the filing party to include information on the party's background, nature of business engaged in, and financial stability before the Director will approve the purchase of a domestic insurer. (See A.R.S. § 20–481.03).

Defendants contend that the Act is valid under the commerce clause because the McCarran–Ferguson Act, passed by Congress, makes such acts immune from challenge under the commerce clause. *Western & Southern Life Ins. Co. v. State Bd. of Equalization*, 451 U.S. 648, 653, 101 S.Ct. 2070, 2075, 68 L.Ed.2d 514 (1981). Defendants further contend that even if the Act was not exempted by McCarran–Ferguson, it would survive a constitutional attack under the commerce clause because the Act does not discriminate against interstate commerce; its local benefits outweigh any harmful interstate consequences; and it will not result in "inconsistent regulation."

Finally, defendants argue that the Act does not violate Hoylake's due process rights. Defendants do not disagree that the due process clause can act as a limit to the extraterritorial reach of a state statute, however, defendants claim that the extraterritorial impact of the Act does not automatically render it unconstitutional. Instead, argue defendants, the relevant inquiry is whether the activity to be regulated has some nexus with the state. *Travelers Health Assn. v. Commonwealth of Virginia*, 339 U.S. 643, 648, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950).

### A. Standard of Review

The basic function of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits. *Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1200 (9th Cir.1989). As such, a preliminary injunction is not a final decision on the merits. *Id.* An order issuing or denying a preliminary injunction will be reversed only if the district court abused its discretion or based its decision upon improper legal principles. *Id.* (citations omitted); *Oakland Tribune, Inc. v. Chronicle Publishing, Inc.*, 762 F.2d 1374, 1376 (9th Cir.1985).

The traditional equitable criteria for granting preliminary injunctive relief are:
1. a strong likelihood of success on the merits;
2. possibility of irreparable injury if relief is not granted;
3. a balance of hardships favoring the moving party; and,
4. the advancement of the public interest in certain cases.

*Los Angeles Memorial Coliseum Commission*, 634 F.2d at 1200 (9th Cir.1980).

### B. Success on the Merits

■ Article I, Section 8 of the United States Constitution grants Congress the power to regulate commerce among the several states. The clause also prohibits states from taking certain actions respecting interstate commerce even absent congressional action. *See, e.g., Cooley v. Board of Wardens*, 12 How. 299, 13 L.Ed. 996 (1952). Congress, however, has chosen to carve out an exception to the commerce clause with respect to states' regulation of insurance companies domiciled within their boundaries. McCarran–Ferguson Act, 15 U.S.C. § 1012. The McCarran–Ferguson Act[4] permits states to regulate insurance companies within their boundaries and removes all commerce clause limitations upon that authority. *See Western & Southern*

---

4. Section 1 of the McCarran–Ferguson Act provides:

Congress declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and shall not be construed to impose any barrier to the regulation of taxation of such business by the several States. 15 U.S.C. § 1011

Section 2 of the act provides:

(a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

(b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business unless such Act specifically relates to the business of insurance: *provided,* that ... the Sherman Act ... the Clayton Act ... and ... the Federal Trade Commission Act ... shall be applicable to the business of insurance to the extent that such business is not regulated by State law. 15 U.S.C. § 1012 (emphasis in original).

*Life Ins.*, 451 U.S. 648, 653, 101 S.Ct. 2070, 2075, 68 L.Ed.2d 514 (1981).

However, McCarran–Ferguson did not purport to exempt *all* state regulations of activities of insurance companies. *SEC v. National Securities, Inc.*, 393 U.S. 453, 459–460, 89 S.Ct. 564, 568–70, 21 L.Ed.2d 668 (1969). Instead, states were granted supreme authority to regulate insurance companies only to the extent that the state law regulates "the *business* of insurance." *Id.* (emphasis in original). Thus, to the extent that the statute regulates the business of insurance, it is immune from constitutional attack on commerce clause grounds.

Two levels of protection are afforded state regulation under McCarran–Ferguson. Section 2(b) provides limited protection. States may not pass regulations that interfere with federal antitrust or securities laws, while sections 1 and 2(a) establish a state's right to tax and regulate the business of insurance free from commerce clause restrictions. *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979).

Arizona's regulatory statute is A.R.S. § 20–481 et seq., the Arizona Insurance Holding Company Systems Act. Section 20–481.02 of the Act provides in pertinent part:

No person other than the issuer shall make a tender offer for or a request or invitation for tenders of any voting security of a domestic insurer if, after the consummation thereof, such person would, directly or indirectly, be in control of such insurer unless, at the time or prior to the time the request or invitation is first published or sent to security holder, such person has filed with the director and has sent to such insurer a statement containing the information required by § 20–481.03. For purposes of this section, a "domestic insurer" shall include any other person controlling a domestic insurer, unless such other person is either directly, or through its affiliates, primarily engaged in business other than the business of insurance.

Section 20–481.07 provides in pertinent part:

A. The tender offer for or request or invitation for tenders may not be consummated until the director approves such tender offer or request or invitation for tenders....

Sections 1 and 2(a) of the McCarran–Ferguson Act are applicable to the Arizona insurance regulatory statutes at issue in this case. The Act is intended to regulate the *"business of insurance."* That is, the Act purports to bring under the review of the Director of Insurance only those tender offers for or a request or invitation for the voting security of a domestic insurer where the person making the tender offer would acquire control either directly or indirectly of the domestic insurer. Thus, the Director is provided an opportunity to review the financial stability of the acquiring company in order to determine whether the acquisition is in the best interest of the policyholders within the State of Arizona.

In this case, Hoylake, through its tender offer for the outstanding shares of B.A.T., will acquire ownership and control of Farmers.[5] Applying the Act to the facts, the Director would be afforded an opportunity to review Hoylake's offer in order to determine its affect on Farmers, a domestic insurance company. The review would consider the proposed change in the control of Farmers and the impact this would have on existing policyholders. Clearly, this relates to the spreading and underwriting of risks, for the review assures that Farmers, or any domestic insurance company, remains a reliable insurer. *See Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 131, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982). The court finds that the Act is protected by McCarran–Ferguson from an attack on commerce clause grounds.

---

5. Although Hoylake has argued that the shareholders of B.A.T. will not change, and thus control of Farmers will not change, Hoylake has expressed its intent to sell Farmers to a willing buyer. It follows that if Hoylake can effectuate a sale of Farmers it necessarily must control Farmers.

■ Even it the Act were not afforded the protection under McCarran–Ferguson, this court in not convinced that it would impermissibly burden interstate commerce.

In its application for preliminary injunction, Hoylake argues that the Act is broad in scope and interferes with commerce taking place wholly outside of the state's borders. *Healy,* —— U.S. ——, 109 S.Ct. 2491, 2497, 105 L.Ed.2d 275 (1989). Specifically, Hoylake claims that enforcement of the Act will allow the Director of Insurance to interfere with a securities offering in another country, and that this is an impermissible burden on interstate commerce. Hoylake's argument is unavailing.

To begin, Hoylake's reliance on *Healy* is misplaced. *Healy,* concerned Connecticut's attempt to enforce its price affirmation statute that required out of state shippers of beer to affirm that their posted prices for products sold to in-state wholesalers were, as of the moment of posting, no higher than the prices at which those products were being sold in bordering states. The Supreme Court found *inter alia* that the statute was unconstitutional because it deprived out of state shippers of whatever competitive advantages they may have possessed due to local market conditions in the states bordering Connecticut. *Id.* 109 S.Ct. at 2500. *Healy* is uninstructive as the facts surrounding that case are too far removed from the facts in this case.

Second, while it is true that the Act will have some extraterritorial effect outside of Arizona, that effect is indirect and collateral to the more limited purpose of protecting insurance policy holders in the State of Arizona. Finally, the Act does not grant to the Director, the authority to reach out beyond the state's borders and subject businesses to the jurisdiction of the state as a price of doing business in Arizona. The Act is triggered only by the attempt of a party to purchase the controlling shares of an insurance company domiciled in the state. This is the type of state regulation that Congress, through the McCarran–Ferguson Act, intended to permit and support. *Prudential Ins. Co. v. Benjamin,* 328 U.S. 408, 66 S.Ct. 1142, 90 L.Ed. 1342 (1946).

The court finds that the Act does not discriminate against interstate or foreign commerce because the Act applies equally whether the tender offer originates within the state or outside of the state. *See CTS Corp. v. Dynamics Corp. of America,* 481 U.S. 69, 87, 107 S.Ct. 1637, 1648, 95 L.Ed.2d 67 (1987). Moreover, Arizona has a substantial interest in preserving the financial viability of its insurance companies vis a vis its citizens.

This public policy interest of the State of Arizona in protecting its insurance policy holders would be greatly impaired if the Director of Insurance were unable to investigate the financial background of entities proposing to takeover one of the largest insurance underwriters in the state. The Director of Insurance, acting under the statutes in question, provides the only means for ensuring that insurance companies in the state can adequately serve their policyholders. "The fact that the burden of a state regulation falls on some interstate companies does not, by itself, establish a claim of discrimination against interstate commerce." *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 126, 98 S.Ct. 2207, 2214, 57 L.Ed.2d 91 (1978).

■ Hoylake argues that the Act is invalid under the due process clause because it restricts out of state contracts for securities sales between non-residents of Arizona. The Act is not subject to constitutional attack on due process grounds merely because it has an effect on business transactions carried on outside the state. *Travelers Health Ass'n,* 339 U.S. 643, 650, 70 S.Ct. 927, 931, 94 L.Ed. 1154 (1950) (citation omitted).

■ With respect to Hoylake's claim that the Act is invalid because it impermissibly encroaches on powers reserved to the federal government under the Foreign Affairs clauses of the United States Constitution, the court, in light of its analysis above, finds the argument without merit.

The greater weight of legal authority compels this court to conclude that Hoylake will not succeed on the merits of its challenge to the Arizona Insurance Holding

Company Systems Act. Since Hoylake has failed to show a high likelihood of success on the merits, the court declines to address the other prongs of the preliminary injunction standard.

Accordingly,

IT IS ORDERED denying plaintiff's application for preliminary injunction.