ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES, LTD.

v.

R. Gary CLARK, Tax Administrator.

No. 94–706–M.P.

Supreme Court of Rhode Island.

May 30, 1996.

Howard E. Walker, Hans P. Olsen, Providence, for Plaintiff.

Marcia McGair Ippolito, Bernard Lemos, Providence, for Defendant.

## OPINION

WEISBERGER, Chief Justice.

This case comes before us on a petition for certiorari filed by Associated Electric & Gas Insurance Services, Ltd. (AEGIS), seeking review of a judgment entered by a judge of the District Court sustaining a final decision rendered by R. Gary Clark, the tax administrator of the State of Rhode Island, imposing a tax of 2 percent on gross premiums charged by AEGIS to four Rhode Island natural-gas utility companies. These premiums were derived from contracts of insurance covering excess-liability risks for each of the utilities. The decision rendered by the tax administrator was based upon findings of fact made by a hearing officer. Said findings of fact were approved by the tax administrator and are set forth as follows:

"1. Associated Electric [ & ] Gas Insurance Service, Ltd. (hereinafter taxpayer) was the subject of an audit for the period 1985 through 1990.

"2. The tax audited was the tax on gross premiums.

"3. Gross premiums are the amounts billed by insurance companies to insureds.

"4. Taxpayer did not file the gross premium tax returns for the periods in question.

"5. The assessment was made as a result of an audit which indicated that the taxpayer was insuring risks in Rhode Island.

"6. Taxpayer has four clients (insured parties) located in Rhode Island.

"7. The gross premiums billed to each of those were assessed.

"8. The natural gas companies covered by the taxpayer are Providence Energy, Valley Resources, South County Gas, and Bristol and Warren Gas Company.

"9. The business address of the taxpayer is Hamilton, Bermuda.

"10. The taxpayer furnished the Division of Taxation with a list of premiums charged and the tax was assessed according to the gross premiums on that list.

"11. The total premiums for Bristol and Warren Gas upon which the 2% premium tax was assessed were $350,618.

"12. The total premiums for Valley Resources upon which the 2% taxes were assessed were $415,400.

"13. The total premiums for Providence Energy Corporation upon which the 2% taxes were assessed were $2,324,177.

"14. The total amount for South County Gas was $288,140.

"15. The taxpayer is not licensed or authorized to issue insurance in Rhode Island.

"16. Direct placement is a transaction between an insurer and a customer without benefit of a broker.

"17. A surplus lines broker procures insurance for a customer from unauthorized or not approved insurance carriers.

"18. The Division of Taxation assessed this tax because the auditor believed that these are properties and risks in Rhode Island representing business transactions and, therefore, subject to tax.

"19. Bills were sent to the taxpayer in Hamilton, Bermuda on September 24, 1991 as follows:

|  | TAX | INTEREST | PENALTY | TOTAL |
| --- | --- | --- | --- | --- |
| 1986 | $ 3,752.00 | $1,902.76 | 0 | $ 5,654.76 |
| 1987 | 17,142.00 | 6,953.55 | 0 | 24,095.55 |
| 1988 | 13,911.56 | 4,243.20 | 0 | 18,154.76 |
| 1989 | 16,672.80 | 3,063.69 | 0 | 19,736.49 |
| 1990 | 16,088.34 | 965.28 | 0 | 17,053.62 |

"20. The Division of Taxation does not recognize authorization to do business in Rhode Island as a prerequisite to liability for tax.

"21. Taxpayer is a mutual insurance company formed in the 1970's in Bermuda to serve utilities.

"22. AEGIS Services is a wholly owned subsidiary of the taxpayer and is the managing general agent in the United States.

"23. The taxpayer receives insurance placements, direct and surplus line, or placements with industrial insureds from around the country.

"24. Neither taxpayer nor AEGIS Services holds any licenses of authorization or agents to do business in Rhode Island.

"25. The taxpayer did not report premiums to the state.

"26. The insured contacted the taxpayer for the instant policies which are the subject of this assessment.

"27. No representatives from the company ever came into Rhode Island, and no agent fees were paid.

"28. Taxpayer has submitted an application to become an eligible surplus lines insurer within the state of Rhode Island in January of 1992."

The District Court judge based his decision on the foregoing findings of fact and determined that the tax administrator was correct in finding as a fact and holding as a matter of law that AEGIS did "transact business in this state" as required by G.L.1956 § 44–17–1, which sets forth:

"Every domestic, foreign, or alien insurance company, mutual association, organization, or other insurer, except companies mentioned in § 44–17–6, and organizations defined in § 27–25–1, transacting business in this state, shall, on or before March 1 in each year, file with the tax administrator, in such form as he or she may prescribe, a return under oath or affirmation signed by a duly authorized officer or agent of the company, containing such information as may be deemed necessary for the determination of the tax herein imposed, and shall at the same time pay an annual tax to the tax administrator of two percent (2%) of the gross premiums on contracts of insurance except ocean marine insurance, as referred to in § 44–17–6, covering property and risks within the state, written during the calendar year ending December 31st next preceding * * *."

First, AEGIS contends that it did not transact business within the state as required by the foregoing statute and further contends that if the statute is so construed, it would be in violation of the due-process clause as interpreted by the Supreme Court of the United States in *State Board of Insurance v. Todd Shipyards Corp.,* 370 U.S. 451, 82 S.Ct. 1380, 8 L.Ed.2d 620 (1962), and earlier cases cited therein, *Connecticut General Life Insurance Co. v. Johnson,* 303 U.S. 77, 58 S.Ct. 436, 82 L.Ed. 673 (1938); *St. Louis Cotton Compress Co. v. Arkansas,* 260 U.S. 346, 43 S.Ct. 125, 67 L.Ed. 297 (1922); *Allgeyer v. Louisiana,* 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832 (1897).

Next, AEGIS argues that these cases considered collectively establish the principle that an insurer who insures risks located within a state, which were directly placed with the insurer by its insureds (and who does nothing more within the state), is constitutionally protected by the due-process clause of the Fourteenth Amendment from regulation and taxation by the state. In the case at bar both the tax administrator and the District Court considered only the right to tax and not the right to regulate. We shall confine our consideration in similar fashion to the right to tax, reserving to another day the question of regulation.

The tax administrator argues that AEGIS did not preserve its due-process claim either in its complaint or in argument before the District Court. We shall accept the representation of counsel for AEGIS that the due-process subject was briefed and argued before the District Court, even though we note that the judge of the District Court did not respond to the due-process argument but only dealt briefly with a commerce-clause issue that apparently had not been raised. We shall, therefore, consider the due-process argument on its merits.

In *Todd Shipyards,* the most recent case cited by AEGIS, the State of Texas imposed a 5–percent premium tax upon a nonresident insured (a New York corporation). 370 U.S. at 453, 82 S.Ct. at 1383, 8 L.Ed.2d at 622–23. Todd Shipyards Corporation purchased insurance policies from Lloyds of London and the Institute of London Underwriters con-

nected with risks upon properties located in Texas. Neither the insured nor the insurer was a resident of Texas. The Court emphasized that the insurance transactions took place entirely outside the State of Texas, that the insurance agreement was negotiated and paid for outside Texas, that the policies were issued outside Texas, and that all losses arising under the policies were adjusted and paid outside Texas. The Court went on to note that the insurers were not "licensed to do business in Texas, [had] no office or place of business in Texas, [did] not solicit business in Texas, [had] no agents in Texas, and [did] not investigate risks or claims in Texas." *Id.* at 454–55, 82 S.Ct. at 1383, 8 L.Ed.2d at 623. Construing the power of the state to tax pursuant to the due-process clause, the Supreme Court held that taxing the nonresident insured in these circumstances violated the due-process clause. *Id.* at 457, 82 S.Ct. at 1384, 8 L.Ed.2d at 625. In referring to prior case law, the Court summarized the cases as follows:

> "The *Allgeyer* case held that Louisiana by reason of the Due Process Clause of the Fourteenth Amendment could not make it a misdemeanor to effect insurance on Louisiana risks with an insurance company not licensed to do business in Louisiana, where the insured through use of the mails contracted in New York for the policy. The St. Louis Cotton Compress case held invalid under the Due Process Clause an Arkansas tax on the premiums paid for a policy on Arkansas risks, made with an out-of-state company having no office or agents in Arkansas. The Connecticut General Life Insurance case held invalid under the due process clause a California tax on premiums paid in Connecticut by one insurance company to another for reinsurance of life insurance policies written in California on California residents, even though both insurance companies were authorized to do business in California."
> *Todd Shipyards,* 370 U.S. at 453–54, 82 S.Ct. at 1382–83, 8 L.Ed.2d at 623.

These cases have been distinguished by a series of state cases involving the taxing of out-of-state insurers who conducted mail-order businesses within the states concerned. *Illinois Commercial Men's Association v. State Board of Equalization,* 34 Cal.3d 839,

671 P.2d 349, 196 Cal.Rptr. 198 (1983), *appeal dismissed,* 466 U.S. 933, 104 S.Ct. 1901, 80 L.Ed.2d. 452 (1984); *People v. United National Life Insurance Co.,* 66 Cal.2d 577, 427 P.2d 199, 58 Cal.Rptr. 599, *appeal dismissed,* 389 U.S. 330, 88 S.Ct. 506, 19 L.Ed.2d 562 (1967); *Ministers Life and Casualty Union v. Haase,* 30 Wis.2d 339, 141 N.W.2d 287, *appeal dismissed,* 385 U.S. 205, 87 S.Ct. 407, 17 L.Ed.2d 301, *reh'g denied,* 385 U.S. 1033, 87 S.Ct. 739, 17 L.Ed.2d 681 (1966).

■ It is significant that in these three cases appeals were dismissed for want of a substantial federal question. Such a dismissal is a determination on the merits. *Washington v. Confederated Bands and Tribes of the Yakima Indian Nation,* 439 U.S. 463, 476–77 n. 20, 99 S.Ct. 740, 749–50 n. 20, 58 L.Ed.2d 740, 753–54 n. 20 (1979); *Hicks v. Miranda,* 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223, 236 (1975).

■ In the state cases cited, the common thread was that the insurers were not present in the state but did business through the mail. State cases, AEGIS argues, cannot erode or modify decisions by the United States Supreme Court. This argument is generally incontrovertible, but loses some force in light of the fact that each case went to the United States Supreme Court and resulted in the appeal's being dismissed for lack of a substantial federal question, which constituted a determination on the merits. Consequently it appears that the maintenance of an office or agents within the state is not a necessary prerequisite to the exercise of the power of taxation.

Moreover, in a recent case relating to taxation the Supreme Court of the United States has distinguished the right to tax pursuant to the due-process clause from the right to tax pursuant to the commerce clause. *Quill Corp. v. North Dakota By and Through its Tax Commissioner,* 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992). In that case the Court, in considering the imposition of state-use tax upon a mail-order vendor of office supplies made a clear distinction between a due-process analysis and a commerce-clause analysis. *Id.* at 303–04, 112 S.Ct. at 1908, 119 L.Ed.2d at 101. In deter-

mining the applicability of *National Bellas Hess, Inc. v. Department of Revenue of Illinois,* 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967), the Court rejected the prior holding in that case of the requirement of physical presence in the state as a prerequisite to the right to tax pursuant to the due-process clause. *Quill Corp.,* 504 U.S. at 307, 112 S.Ct. at 1910–11, 119 L.Ed.2d at 103–04.

After considering the effect of *International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95, 104 (1945), and its progeny, particularly *Shaffer v. Heitner,* 433 U.S. 186, 212, 97 S.Ct. 2569, 2584, 53 L.Ed.2d 683, 703 (1977), the Court applied the flexible doctrine relating to in personam and in rem state in-court jurisdiction to the power of taxation. It reiterated that "if a foreign corporation purposefully avails itself of the benefits of an economic market in the forum state, it may subject itself to the state's in personam jurisdiction even if it has no physical presence in the state." *Quill Corp.,* 504 U.S. at 307–08, 112 S.Ct. at 1910, 119 L.Ed.2d at 103 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The Court went on to apply this reasoning to the collection of a use tax on sales within the state even in the absence of physical presence:

> "Comparable reasoning justifies the imposition of the collection duty on a mail-order house that is engaged in continuous and widespread solicitation of business within a State. Such a corporation clearly has 'fair warning that [its] activity may subject [it] to the jurisdiction of a foreign sovereign.' *Shaffer v. Heitner,* 433 U.S., at 218, 97 S.Ct. at 2587 (Stevens, J., concurring in judgment). In 'modern commercial life' it matters little that such solicitation is accomplished by a deluge of catalogs rather than a phalanx of drummers: the requirements of due process are met irrespective of a corporation's lack of physical presence in the taxing State. *Thus, to the extent that our decisions have indicated that the Due Process Clause requires physical presence in a State for the imposition of duty to collect a use tax, we overrule those holdings as superseded by developments in the law of due process.*" (Emphasis added.) *Quill Corp.,* 504 U.S.

at 308, 112 S.Ct. at 1911, 119 L.Ed.2d at 104.

In the case at bar AEGIS has purposefully availed itself of the benefits of an economic market in Rhode Island. During the period covered by the audit of the tax administrator, AEGIS has collected premiums of $3,378,335. It could be inferred by the justice of the District Court, relying on evidence presented at the hearing before the tax administrator, that AEGIS negotiated business with these four major gas utilities by mail. Whether this mail constituted a deluge as in *Quill* or a narrowly focused stream of correspondence, the bottom line shows that the method was effective and successful. The difference between solicitation of business by sales representatives and drummers and communication by use of the mails has been abandoned in *Quill* for due-process purposes. Direct placement through correspondence is very closely related to mail solicitation even though initiated by the insured. There is no question that AEGIS purposefully availed itself of a business opportunity of significant magnitude in negotiating these insurance policies with the four gas-utility companies.

We are of the opinion that the circumstances in this case bring the controversy within the clear due-process analysis in *Quill.* The holding in *Todd Shipyards Corp.* has been superseded not only by the state cases that purported to distinguish it but more significantly by the clear holding in *Quill.* We no longer exalt form over substance. A foreign insurer who manages to collect millions of dollars in premiums for excess liability of four natural-gas utilities that are domiciled within this state creates a purposeful economic presence in the state. It may be inferred from the testimony that claims made by these utilities would be settled by consultants or other persons who would of necessity be required to investigate circumstances and conditions within the State of Rhode Island. Any dispute between the insured utilities and AEGIS could properly be referred by either party to the courts of this state. There seems little difficulty in concluding that service of process could be made validly upon AEGIS within this state for any dispute arising out of its insurance of these utilities. *See Burger King Corp. v.*

*Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

Since we have determined that the analysis of *Quill* is controlling here and that the facts of this case come within the principles therein enunciated, we conclude that the District Court was not in error in upholding the premium tax imposed by the tax administrator.

For the reasons stated, the petition for certiorari filed by AEGIS is denied. The writ heretofore issued is quashed, the judgment of the District Court is affirmed, and the papers in the case may be remanded to the District Court with our decision endorsed thereon.