DEER PARK, Galena Park, and Sheldon Independant School Districts, Plaintiffs,

v.

HARRIS COUNTY APPRAISAL DISTRICT, Shell Chemical Corporation, Shell Oil Company, Marubeni Tubulars, Inc., Mitsui Tubular Products, Inc., Lyondell–Citgo Refining Co., Ltd., Crown Central Petroleum Corp., Vinson Supply Co., Siderca Corporation, and Marubeni America Corporation, Defendants.

Civil Action No. H–96–3256.

United States District Court, S.D. Texas, Houston Division.

May 15, 1997.

Russell R. Graham, Calame Linebarger Graham & Pena, Austin, TX, for plaintiffs.

Kenneth Wall, Olson & Olson, Houston, TX, for Harris County Appraisal District.

Jasper G. Taylor, III, Fulbright & Jaworski, Houston, TX, for Shell Chemical Corporation, Shell Oil Company.

Julian C. Green, Jr., Houston, TX, for Marubeni Tubulars Inc.

John S. Brannon, Morris & Campbell, Houston, TX, for Mitsui Tubular Products Inc.

Andrew G. Halpern, Strasburger & Price, Dallas, TX, for Lyondell–Citgo Refining Company Ltd., Crown Central Petroleum Corporation, Siderca Corp.

Cynthia M. Ohlenforst, Hughes and Luce, Dallas, TX, for Vinson Supply Co.

Opinion on Judgment

HUGHES, District Judge.

1. *Introduction.*

Three school districts located near the port of Houston sued companies in foreign trade zones for property taxes. A federal statute allows companies in the zones an exemption from state and local *ad valorem* taxes on personal property. The school districts claim that the law unconstitutionally intrudes on their authority as components of the federal system of divided power and unconstitutionally extends the national authority over foreign trade.

The school districts cannot collect taxes from these companies because the exemption statute's purpose and effect is directly and substantially related to an express power that the Constitution confides to the national government. A constitutional statute supersedes contrary provisions of the Texas Constitution and laws.

### 2. *Foreign Trade Zone.*

A foreign trade zone is an area that is physically within the United States, but it is treated as if it were outside of the United States territory for import duty purposes. Since 1934, federal law has permitted importation of goods into zones without payment of customs duties until they are transferred from the zone into the general domestic economy. If the products are shipped to another country, then no American duty is charged. *See* The Foreign Trade Zones Act of 1934, 19 U.S.C. §§ 81a–81u (1996). The goods—usually raw materials or parts—can then be assembled, stored, and processed by the company in the zone. The purpose of a zone is the economic benefit to the domestic economy of American companies' using local workers, supplies, and other resources more frequently than would have been the case if the companies had to pay United States duties before working with the goods. A company that buys equipment to process these tax-exempt goods will owe the school district taxes on the machines. *See A.T. Cross Co. v. Sunil Trading Corp.,* 467 F.Supp. 47, 50 (S.D.N.Y.1979).

### 3. *The 1983 Expansion.*

Ironically, the principal congressional sponsors of an expansion of the law in 1983 were Texas Senators John Tower and Lloyd Bentsen and Texas Congressmen Jim Wright and Jack Brooks. Their bill extended the exemption from customs duties to include an exemption from state and local *ad valorem* taxes. The statutory exemption says:

> Tangible personal property imported from outside the United States and held in a zone for the purpose of storage, ... assembly, ... or processing, and tangible personal property produced in the United States and held in a zone for exportation ... shall be exempt from State and local *ad valorem* taxation.

19 U.S.C. § 81o (e).

The bill was introduced to cure a "unique problem in the State of Texas in which the local taxing jurisdiction does not have the authority to exempt tangible personal property in a [foreign trade zone] from taxation due to the State constitution." H.R. REP. No. 267, 98th Cong., 1st Sess. 35–36 (1983). Texas's constitution specifies articles that are exempt from tax, and no other exemptions may be allowed by local governments. The

legislators "expected that Federal law would preempt State law in this case." *Id.*

### 4. *Texas & Property Taxes.*

The Texas Constitution requires that all property be taxed unless the property has been allowed an exemption in the constitution itself. TEX. CONST. art. VII, §§ 1, 2, and 3. Until recently (in historical terms) Texas was dependent on *ad valorem* taxation of property. These taxes were administered through independently elected county officers who appraised the property, assessed the taxes, and collected the taxes for the county and state. The state had no separate appraising or collecting officers. Under these circumstances Texas needed to keep locals from allowing exemptions that would have the effect of shifting part of that county's state-tax burden to other counties.

Texas stopped using ad valorem taxes for direct state revenue in 1968, leaving that source to local governments. This shift was possible because in 1961 the state had adopted a state-wide sales tax, among other taxes. See TEX. CONST. art VIII, § 1–e(1) (abolition of ad valorem taxes); *see generally* Mark G. Yudof, *The Property Tax in Texas Under State and Federal Law,* 51 TEX. L.REV. 885 (1973).

The administrative cost and abuses of each city and school district having its own appraisal process in addition to the county's system led the state to compel all taxing authorities within a county to use a single appraisal authority. The Harris County Appraisal District serves as the sole source of property valuations for tax purposes. Because it did not list a taxable value for these companies' stocks of goods, the school districts sued to compel it to appraise the property held by these companies so that they may assess taxes based on that value. The appraisal district has admitted that it will obey the law and that it has no direct interest in the outcome of the case, with the companies being the real parties in interest.

### 5. *Commerce Clause, Zones & the Constitution.*

The districts say that the exemption of goods present within the district-even

if they are exempt from federal taxes-are indistinguishable from other goods in the districts. The districts' position is that: The use of the commerce power to reach into a unit of local government to exempt particular goods based on their past or future locations (a) extends the authority of the government beyond the constitutional purpose of the commerce clause and (b) impedes the constitutional function of regional and local governments as a counter-force to the national government.

A governmental act does not violate the constitution, if:

- By its terms or impact, the act has an objective that relates rationally to a governmental power entrusted to that government;

- The act employs a permissible means;

- The actual accomplishment of the objective and significance of the objective justify the nature and extent of the resulting inhibition of a component of liberty;

- The act has been adopted and applied with procedural regularity; and

- The act distinguishes between affected and non-affected persons defensibly because the criterion between them is logically connected to the objective.

As Chief Justice John Marshall said, "Let the end be legitimate, [then] all means that are appropriate ... to that end,'which are not prohibited [by] the letter and spirit of the Constitution, are constitutional." *M'Culloch v. Maryland,* 4 Wheat. 316, 421, 4 L.Ed. 579 (1819).

### A. *Entrustment.*

The Constitution confides the subject of foreign commerce to the national government. Congress is allocated authority over commerce "among nations" and a monopoly on import duties. U.S. CONST. art. I, § 8. Further, "No state shall, without the Consent of Congress, lay any Imposts or Duties on Imports or Exports...." U.S. CONST. art I, § 10. Further, "The Congress shall have the Power ... To regulate Commerce with foreign Nations, and among the several States ..." U.S. CONST. art 1, § 8. This power is "complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the constitution." *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 196 [6 L.Ed. 23] (1824).

### B. *Permissible Means.*

The Constitution restricts congress' power over taxes several ways, like tax bills must originate in the house and import duties must be uniform nationally, but no provision expressly-comparable, say, to the ban on "takings"-disallows the technique of tax exemption from the tools congress may use to effect its policy decisions.

### C. *Rational Relation.*

To comply with its obligations under the Constitution, the national government must select a means that is plausibly related to the end that the Constitution has said it may address. It is not obliged to select a means that is the best available, single-purposed, or proven. Even the search for a plausible relation is not an evaluation among the levels of effectiveness; it is, rather, the search for a violation of constitutional limits on the scope of the national government by use of a power for non-national purposes. Irrationality suggests deceit, not insanity.

The actual economic effects locally or nationally are probably unknowable. Deer Park loses the revenue from the zone property, but it gets increased revenue from rise in demand for houses and other business properties, if it works. *See generally Robert G. Lynch, Do State & Local Tax Incentives Work?,* ECON. POL'Y INSTITUTE (1996); Joseph P. Phillips & Ernest P. Gross, *The Effect of State and Local Taxes on Economic Development: A Meta–Analysis,* 62 SOUTH. ECON. J. 320 (1995). Although the goods are tax exempt, the new equipment a company acquires to process the goods is added to Deer Park's source of revenues. At least the national government defers or forgoes its taxes along with depriving the districts; this uniformity suggests an absence of malice. "Foreign trade zones are valued because they actually promote domestic

industry and create jobs.... [T]axation of goods in foreign trade zones could arguably harm domestic industry...." *R.J. Reynolds Tobacco Co. v. Durham County,* 479 U.S. 130, 153 n. 22 [107 S.Ct. 499, 512 n. 22, 93 L.Ed.2d 449] (1986).

### D. Taxes.

Whatever the particular merit of the plan as economic stimulation, exemption from local tax has long been a tool of building a national economy. The Constitution itself bans local tax barriers to interstate and foreign trade in the form of customs duties. See U.S. CONST. art. I, § 10.

In the absence of a statute, goods in foreign commerce although present in the territory of the United States are free of local taxes. *See Xerox Corp. v. County of Harris, Texas,* 459 U.S. 145 [103 S.Ct. 523, 74 L.Ed.2d 323] (1982); *Hooven & Allison Co. v. Evatt,* 324 U.S. 652, 679 [65 S.Ct. 870, 883–84, 89 L.Ed. 1252] (1945).

### E. Liberty Component: Federalism.

This federal statute could adversely affect individual liberty through its shifting the constitutional balance of power between the aggregate state and local governments and the national government. In American political discourse, the arrangement of governmental power among different levels and regions is called federalism. A significant shift in the relation between the levels could disrupt the constitutional machinery, violating the implicit principle of balance through federalism.

Excluding sources of revenue could be done so that the local sub-unit of the state was impotent. With it local administrative units crippled, the state could be eviscerated. While this is true and may occasionally seem likely, this particular statute will not cause the collapse, so it is hypothetical. Excluding the property immunized by the foreign trade zones, Deer Park had a valuation of $541 million of inventories alone in 1996, generating almost $8 million of tax revenue; Galena Park had a valuation of inventories of $555 million in 1996, generating even more tax revenue. *See Taking Stock of Inventory Taxes,* FISCAL NOTES (Texas Comptroller of Public Accounts), March 1997, at 6.

### F. Liberty Component: Republican Guaranty.

The school districts have urged that the national government has breached its duty to the state through the districts because the Constitution says the "United States shall guarantee to every State in this Union a Republican Form of Government...." U.S. CONST. art. IV, § 4. Ordinarily, a guaranty would be protection from the acts of some third-party and not from the guarantor itself. The text could be understood to mean that the national government guarantees that it will not destroy the states' republican governments by its own excesses, but the constitutional role of the states is balance through federalism, which does not require republican states. A monarchical Nebraska could counter national power.

If a state's government did not observe the limits on its power that republicanism requires, its imposition on its people would require a response by the national government. The constitutional guaranty says that the national government will assist the people of a state in maintaining their right to a state administration whose power is derived "from the consent of the governed." Rather than a people petitioning Washington to restore the state's republican institutions, we have a state-created government objecting to a reduction of taxes on its people.

The companies argue, with much legal "authority" on their side, that the guaranty required by the Constitution of the United States for the benefit of the people of the states cannot be enforced in court. The occasion to decide whether to enforce the Constitution's limits on the character of state governments does not now arise, but an unenforceable limit is no limit, and the text of the Constitution is mostly keel and little sail.

The school districts seek shelter from the national omnipresence in the reservation of the power to the states and people

that the people did not actually allocate to the national government in the Constitution. *See* U.S. CONST. amend. X. Even if the reservation in the Tenth Amendment restates the implication of the restricted grants that precede it, our experience has shown that the categories of grant have become infinitely expandable; the founders denied a possible inference that there was a quantum of power floating free for acquisition by the national government. Since this statute fits squarely within one of the express grants of power, the reservation's express vesting of residual authority in the people is not implicated.

The form of government may seem like a lawyer's hyper-technicality, but our Constitution restricts power by allocating it to specific parts of the apparatus and by sheer prohibitions. Other than the implicit policy of preserving individual liberty through limited government, the Constitution is about methods and process rather than policies and ends. The structure of the machinery is the Constitution; what it constitutes is a structure. It constitutes no policy about postal deficits or tax level. The preservation of the states as a counter-weight to the national government is essential to preserving the Constitution.

## G. *Affected Persons.*

The districts say that they are adversely affected because they are forced to forgo revenue to support national goals that other districts collect. They say that there is no defensible way to distinguish between school districts hurt by this act and those that are not.

The distinction among districts is rationally purposeful because the act exempts a particular class of goods defined by geographical areas that are not school-district specific. Some of a district's area may be in a zone, some may not, all may be, or all may not; the area is chosen for its likelihood of having the ability to attract foreign trade. If a foreign trade zone were created in a school district that had no foreign commerce, then none of the goods present at tax time would qualify for the exemption.

The relation between the zone and district is adventitious, but the relation between the zone and foreign trade is direct.

## 6. *Texas Tax Code.*

Indeed, the right of Congress to preempt state taxation, whether under the Commerce Clause or under another constitutional grant of authority, is recognized by the Texas Tax Code itself. The code confirms that "[p]roperty exempt from *ad valorem* taxation by federal law is exempt from taxation," recognizing the federal government's power to create exemptions. TEX. TAX CODE ANN. § 11.12 (1992). The Texas legislature itself recognized Texas's public interest in encouraging uniform application of law, as well as foreign and other trade with Texas citizens, by expressly acknowledging to federal statutory exemptions from local *ad valorem* taxation.

Texas adopted a statute allowing local districts at their option to exempt goods being processed for export. This statute may be broader than the current federal exemption, but whether it is wholly moot or still useful is irrelevant to the dominance of the federal policy. *See* TEX. TAX CODE ANN. § 11.251 (1992) (the option for local taxing jurisdictions exempts goods warehoused in Texas for less than 175 days that then leave the state).

## 7. *Conclusion.*

Under its authority over international commerce, the national government created foreign trade zones for goods to be exempt from local *ad valorem* taxes while processed in the United States; that exercise of constitutional authority complied with the limits of that power itself and the limit on its intrusion on state governments' partial autonomy. When the national government constitutionally exercises it authority, the national policy supersedes state and local rules that conflict. *See* U.S. CONST. art. VI, § 2 (Supremacy Clause). In the context of state taxation, "the power of Congress to grant protection to interstate commerce against state regulation or taxation is so complete that its ideas of policy should prevail." *State Board of Insurance v. Todd Shipyards Corp.*, 370 U.S. 451, 456 [82 S.Ct. 1380, 1384, 8 L.Ed.2d 620] (1962) (citations omitted).

The Harris County Appraisal District has constitutionally applied the federal exemption to the Deer Park, Galena Park, and Sheldon Independent School Districts. The companies do not owe *ad valorem* taxes on their unimported goods.